PATRICK STANTON ET AL., APPELLEES, V. ALBERTINE DRIFF-KORN ET AL., APPELLANTS.

FILED DECEMBER 17, 1908.   No. 15,263.

1. Specific Performance: WHEN ENFORCED. "Specific performance of an alleged contract will not be enforced unless the court can clearly see upon what proposition the minds of the parties have met in a common intention." *Krum v. Chamberlain*, 57 Neb. 220.

2. ———: ———. Specific performance will not be enforced unless the contract has been entered into with perfect fairness, and without misapprehension, misrepresentation, or oppression, unless it would be unjust and inequitable to refuse to enforce it. *Morgan v. Hardy*, 16 Neb. 427.

3. ———: EVIDENCE. Evidence examined and set out in the opinion, *held* insufficient to establish a claim for specific performance.

APPEAL from the district court for Madison county: JOHN F. BOYD, JUDGE. *Reversed with directions.*

*John C. Wharton* and *M. D. Tyler,* for appellants.

*M. F. Harrington* and *S. D. Robertson,* contra.

FAWCETT, C.

On August 18, 1904, defendants executed and delivered to one F. A. Schmalle, a contract for the sale of the lands in controversy, and at the same time, and as a part of the same transaction, executed and delivered to Schmalle a bill of sale for certain articles of personal property. Subsequently, and prior to September 15, 1904, Schmalle assigned both the contract and bill of sale to plaintiffs. As a matter of fact, Schmalle had no interest in the transaction, but simply acted as a dummy for the plaintiffs, receiving a fee of $10 for his services. The contract called for the payment of $6,850, $1,000 of which was paid at the time of its execution, and the remainder was to be paid on or before September 15, when defendants were to convey the land by fee simple title, furnish an abstract, etc. At the time the contract was entered into there was pending in the district court for Madison county a suit by one Mahala Jane Volgamore to recover a dower interest in one of the quarter sections of land in controversy here, which suit had been tried and submitted, but not yet decided. On September 15 defendants, knowing nothing of the assignments from Schmalle to plaintiffs, executed a warranty deed to the lands in controversy to Schmalle, and tendered it to the plaintiffs, who they had been led to believe were acting for Schmalle. They were then informed by the plaintiff Luikart that the plaintiffs had obtained an assignment of the contracts and a quitclaim deed from Schmalle. Defendants thereupon, on the same day, prepared a new deed to plaintiffs, and tendered it to plaintiffs and demanded the payment of the remainder of the purchase price. Plaintiffs refused to accept the deed, on the ground that the Volgamore suit was still pending against the land, and that defendants could not make a clear title, and further stated that they were ready to pay the remainder of the money whenever defendants could make them a clear title. The defendants stated that they had done all they could, and, if

plaintiffs were not willing to accept the deed, the deal would have to be called off, and defendants then offered to return to plaintiffs the $1,000 which plaintiffs had paid at the time of the execution of the contract; which offer plaintiffs refused to accept. Nothing further was done by any of the parties until November 22, 1904. On that day plaintiffs commenced an action at law in the district court for Madison county against defendants, in which they set out the contract hereinbefore referred to, and alleged that defendants had refused to convey the lands in controversy, and prayed for a return of the $1,000 which they had paid at the time of the making of the contract, for $750 damages on account of the refusal of defendants to deliver the personal property, and $3,550 damages caused by the refusal of the defendants to convey the land. The defendants appeared in that action, and filed a demurrer to the petition. On December 15, 1904, the district court for Madison county decided the Volgamore case adversely to plaintiff therein, and entered a decree quieting and confirming the title of the defendants (defendants in this suit). That suit was not appealed, and the decree became final. On January 28, 1905, in vacation, plaintiffs filed a written dismissal without prejudice of the action at law which they had commenced on November 22, 1904, and on the same day brought the present suit, in which they pray for the specific performance of the contract of August 18, 1904, and for an accounting.

For answer defendants allege: (1) That plaintiffs, with full knowledge of all the facts and circumstances of the transactions, on the 22d day of November, 1904, commenced an action at law in the district court for Madison county for a return of the $1,000 which they had paid, and for other damages by reason of defendants' failure to convey, in the sum of $4,300, making an aggregate of $5,300; (2) that, in arranging the terms of the sale with Schmalle, defendants told Schmalle all about the Volgamore suit, and that, if they sold said farm to Schmalle, he must take the same subject to such suit, and that

Schmalle then and there stated to them that he knew all about the Volgamore suit, and was willing to purchase said land subject thereto; that, when the written contract for the sale was presented to defendants, defendants stated to the plaintiffs that there was to be no written contract, but that they were to make a deed for the land, and immediately receive their money; that plaintiffs thereupon stated that it was necessary to have a writing when real estate was sold, and that the contents of the purported contract were only the terms and agreement which they had made with Schmalle orally on the day previous; that defendants are not educated in the English language, and are unable to read the same readily, and that, owing to age and infirm eyesight, they could not see to read without glasses; that they thereupon requested plaintiffs to read such purported contract, so that they might be informed of its terms and conditions; that plaintiffs stated it was not necessary to read the contract, that there was nothing contained therein different from the contract already made and entered into between defendants and Schmalle; that defendants, relying upon said statements and representations of the plaintiffs, and believing the same to be true, and that they were selling the property subject to the said Volgamore suit and were to be paid in cash the whole amount of the purchase money above described, signed said contract; that the statements made by plaintiffs as to the contents of the contract were false and fraudulent, and that it was by reason of such false and fraudulent statements that defendants were induced to sign and execute said contract; that defendants have since learned that, while said Schmalle purported to be the purchaser of said property, he in fact was not purchasing the property, but was simply the instrument and tool used by plaintiffs to secure the execution of said contract; that thereafter plaintiffs demanded possession of the property upon the payment of $1,000, stating that there would be some little delay about getting some necessary papers from Madison, and that when they received

those papers they would forward the rest of the money
to defendants; that defendants refused to deliver posses-
sion of the land until the entire amount of the purchase
money was paid; that subsequently they executed a good
and sufficient deed of conveyance to Schmalle, and ten-
dered the same to plaintiffs; that plaintiffs then stated
that they had procured an assignment of said contract
from Schmalle, and requested defendants to make a deed
for said property to them; that defendants immediately
executed a deed running to the plaintiffs, and tendered
the same, and demanded the immediate payment of the
remainder of the purchase money; that plaintiffs refused
to accept the deed or to pay the purchase money, giving
as a reason that the Volgamore suit was still pending
and undetermined; that immediately upon learning that
said purported written contract contained other and
different conditions than those contained in the oral con-
tract between them and said Schmalle, defendants offered
to return the said sum of $1,000 which had been paid as
part of the purchase money, but the plaintiffs refused to
receive the same; that immediately thereafter they left
the said money in the Elkhorn Valley Bank at Tilden, in-
structing the officers of said bank to return the same to
said Schmalle or the plaintiffs upon their request, and
that said money has ever since remained in said bank,
subject to the order of the said Schmalle or the plaintiffs;
that defendants "now bring said money into court and
tender the return of the same"; that since the time of the
tender of the deed to said property the Volgamore suit
has been finally adjudicated and determined in favor of
defendants; that, by reason of the failure of plaintiffs to
accept the deed tendered to them in accordance with the
terms of their contract with Schmalle, defendants have
been subjected to great inconvenience and expense, and
have been prevented from consummating their plans,
whereby all the members of their family could be united
in their home at Omaha; that said written contract was
never made and entered into by them with a knowledge of

its contents, but that their signature thereto was obtained by fraud, deceit and misrepresentation on the part of pl tiffs, and that the terms contained in said purported tract were never agreed to by the defendants nor acquiesced in; that the minds of the parties to said purported contract never met, and that said document is not binding upon defendants, and pray the court to find that the said alleged written contract was procured by fraud and deceit, and to adjudge that the same is void and of no force and effect, and that the bill of sale of the personal property executed by defendants to Schmalle be also found to have been procured by fraud, misrepresentation and deceit, and that the same is null and void, and that it be adjudged to be canceled and annulled; that plaintiffs' action be dismissed, and that defendants have and recover their costs herein expended, and for general and equitable relief.

For reply plaintiffs aver that at the time said action was commenced the Volgamore suit was pending, and that before the commencement of this action the said Volgamore suit was determined and adjudicated in favor of defendants, and thereupon said action for damages was dismissed by plaintiffs without prejudice, and this action commenced; that at the time this action was commenced defendants were able to comply with the terms of the contract, and deny all of the other allegations of plaintiffs' petition. Subsequently a supplemental petition and an answer thereto were filed; but, in the light of the disposition which must be made of the case, it is unnecessary to refer to them.

The district court found in favor of plaintiffs and against the defendants, and that the $1,000 of the agreed purchase price of $6,850 had been paid; that there still remained unpaid $5,850; that the value of the personal property referred to in the contract was $730, and defendants had wrongfully converted the same to own use; that said sum of $730, the value of the p property, should be deducted from said $5,850, l

remainder due from defendants to plaintiffs of $5,120; that plaintiffs had brought into court the full remainder of the purchase money, $5,850, and tendered the same to the defendants, and that plaintiffs stand ready and willing to pay and are prepared to pay said money; that said money so tendered by plaintiffs was not left with the clerk of the court nor deposited with him, but was retained by the plaintiffs, and has at all times been and still is retained by the plaintiffs, and that the value of the use of said money in the hands of the plaintiffs is equal to and offsets the value of the rents and profits of said lands; and decreed that within 20 days from the date thereof, upon plaintiffs paying to the defendants or to the clerk of the court, the remainder of the purchase price as found by the decree, the defendants should convey to the plaintiffs by good and sufficient deed the real estate in controversy. From that portion of the decree awarding specific performance, defendants appeal; and, from that part of the decree which adjudged that the value of the use of the money in the hands of the plaintiffs was equal to and offset the value of the rents and profits, plaintiffs prosecute a cross-appeal.

The evidence shows that Schmalle was a minister of the gospel; that, when he first called upon defendants to try and purchase their farm, he told them that he was tired of preaching, and wanted to go on a farm; that defendants first asked $10,000 for the farm, which amount Schmalle stated was entirely too much, that there were present at that interview Schmalle, Mr. and Mrs. Driffkorn, defendants, and their son; that Mrs. Driffkorn, in whom the title to the land stood, stated to Schmalle that she could not sell the farm because there was a suit against the land by Mrs. Volgamore for a dower; that Schmalle said he knew all about that suit, and that he uld take the land subject to it, and for that reason he have it at a less price. They failed to come to- on the terms, and separated. The next day le and plaintiff Luikart again went to the farm,

at which time Schmalle had another interview with Mrs. Driffkorn, and again failed to come to terms. After Schmalle and Mr. Luikart left, Mrs. Driffkorn and her husband talked matters over; the husband urging that she consent to the sale, so that he could return to Omaha and the family all be together again. It seems that prior to this time Mrs. Driffkorn and some of the children had been living in Omaha, while Mr. Driffkorn was living upon the farm, and one of their main reasons for desiring to sell appears to have been that the family might all be together again at their Omaha home. As a result of that conversation, Mrs. Driffkorn finally yielded, and that evening Mr. Driffkorn went to Tilden, and told Schmalle that his wife had decided to sell. Thereupon the parties repaired to the bank of plaintiff Luikart, where the contract and bill of sale were drawn up, and signed by Mr. Driffkorn with the understanding that Mrs. Driffkorn would sign the next day, and on the next day Schmalle and Luikart appeared at the farm with the contract for the purpose of obtaining Mrs. Driffkorn's signature thereto. The evidence as to what transpired at that time is quite conflicting, the testimony in behalf of defendants showing that Mrs. Driffkorn objected to signing any paper, stating that there was not to be any written contract, but that they were to pay her the money in cash and receive their deed. She also testified that she had left her glasses in Omaha, and was unable to read, and requested them to read the contract to her, so that she might know what it contained; that plaintiff informed her that it was not necessary to read the contract, as it contained simply the terms she had talked over with Schmalle the day before; that, in reliance upon their assurance that there was nothing in the contract different from what she had talked with Schmalle, she signed the paper and received the $1,000 advance payment. Within a day or two after this plaintiffs endeavored to gain possession of the land, but to this Mrs. Driffkorn objected, stating that they could not have possession until they paid her the remainder of

the purchase money, and defendants continued to retain possession.

The question as to whether or not plaintiffs were justified in refusing to receive the deed tendered September 15 and pay the remainder of the purchase money, in our judgment, turns upon the question as to whether or not they purchased the land from Mrs. Driffkorn with full knowledge of the Volgamore suit, and subject thereto. Mr. Luikart testified that he never heard of the Volgamore suit until after the contract had been signed and he had ordered an abstract of the land. Plaintiff Stanton, however, admitted that he had heard of the Volgamore suit, but supposed that it had been settled. If he had heard of the Volgamore suit before the contract was entered into —a suit which involved a substantial interest in the lands he was purchasing—and then, on the strength of a mere rumor that that suit had been settled, joined with Mr. Luikart in paying a substantial sum of money as an advance payment on the purchase of such land, he certainly acted very differently from what prudent men ordinarily act under such circumstances. However that may be, it seems to us that it is unnecessary to consider what knowledge either Mr. Luikart or Mr. Stanton may have had of the Volgamore suit, if their agent, Schmalle, whom they had sent to make the purchase, was fully advised of that suit at the time he was conducting his negotiations with Mrs. Driffkorn, and agreed to purchase the farm subject thereto. On this branch of the case there is a conflict in the testimony. Schmalle says that no such statements were made or agreement had. Mrs. Driffkorn and her husband and their son all three testified unqualifiedly that Mrs. Driffkorn spoke about the Volgamore suit; that Schmalle said he knew all about it; and the testimony of at least one of these witnesses shows that he used the Volgamore suit as an argument for beating down the price. In the face of this testimony as applied to the law which we have laid down on the subject, we think the district court erred in granting plaintiffs specific perform-

ance.   In *Krum v. Chamberlain,* 57 Neb. 220, we said: "Specific performance of an alleged contract will not be enforced unless the court can clearly see upon what proposition the minds of the parties have met in a common intention." It certainly cannot be contended under this evidence that the minds of the parties ever met in a common intention that plaintiffs were not to pay the remainder of the purchase money until defendants had relieved the land of the claim asserted in the Volgamore suit.

It is also well settled in this court that courts of equity will not always enforce a specific performance of a contract.   In *Morgan v. Hardy,* 16 Neb. 427, we said: "Such applications are addressed to the sound legal discretion of the court, and the court will be governed, to a great extent, by the facts and merits of each case, as it is presented.   *  *  *   Specific performance will not be enforced unless the contract has been entered into with perfect fairness, and without misapprehension, misrepresentation, or oppression." And in *Clarke v. Koenig,* 36 Neb. 572, we said: "Specific performance is not generally a legal right, but rests in the sound, legal, judicial discretion of the trial court.   *  *  *   A party invoking the equity powers of a court to enforce specific performance of a contract, which he claims is for the sale to him of real estate, must exhibit a contract unambiguous and certain." In *Kofka v. Rosicky,* 41 Neb. 328, we said: "Specific performance is a matter of discretion in a court which withholds or grants relief according to the circumstances of each particular case, where the general rules and principles governing the court do not furnish any exact measure of justice between the parties." As early as *Morgan v. Bergen,* 3 Neb. 209, we said:  "In an action for specific performance, the contract sought to be enforced must be clearly established, and the acts of part performance must unequivocally appear to relate to the identical contract upon which the action is brought." The above holdings of this court are eminently sound, and should be strictly adhered to.   In the light of the law as

it is thus announced, can it be said that the plaintiffs, in
obtaining the execution of the contract which they are
seeking to enforce, acted with perfect fairness, and that
defendants entered into the contract as made, without
misapprehension or misrepresentation? We think not.
A reading of the entire record impresses us that, all
through the transactions referred to, defendants were act-
ing openly and in good faith; that they were willing to
sell their lands to the plaintiffs for $6,850, subject to the
Volgamore suit; and also impresses us that the plaintiffs
did not act openly and fairly and in good faith. We do
not know what their purpose was in sending Mr. Schmalle
to represent them in the attempted purchase of the land,
nor why plaintiff Luikart so zealously concealed his con-
nection with the transaction, even to the extent of acting
as notary public in taking the acknowledgment of the
Driffkorns to the contract, an act on his part which, in
our judgment, rendered the acknowledgment absolutely
void. We think that the evidence in this case falls far
short of establishing a contract entered into with perfect
fairness, and without misapprehension or misrepresenta-
tion.

There is another reason why we think the court in the
exercise of its discretion should have denied specific per-
formance in this case. When the defendants tendered the
deed on September 15, and it was refused by plaintiffs,
defendants immediately offered to return the $1,000 which
had been paid. This plaintiffs refused, stating that they
were ready to pay the remainder of the purchase price
whenever defendants could give them a clear deed. If
they had stood upon that ground, they would have occu-
pied a more equitable position before the court, but they
did not do so. On the contrary, on November 22 they com-
menced their action at law, hereinbefore referred to, in
which they sought to recover back the $1,000, and dam-
ages for the failure of defendants to convey. Having com-
menced that action, we think defendants had a right to
assume that plaintiffs no longer intended to insist upon

Stanton v. Driffkorn.

a performance of the terms of the written contract by defendants, and that defendants then had a right to make such disposition of the personal property set out in the bill of sale as they might deem proper. This defendants proceeded to do, and thereby materially changed their situation to their disadvantage if plaintiffs should subsequently attempt to specifically enforce the contract. Plaintiffs persisted in their law action until the Volgamore suit was decided in favor of the defendants. They then sought to change their ground by dismissing the action at law and commencing the present suit. We do not think a court of equity in the exercise of its sound discretion should sanction such a course. A party to a controversy should not "blow hot and blow cold." The defendants were entitled to know what course plaintiffs were going to take, and, having elected to proceed at law, they should not be permitted to subsequently abandon that proceeding and proceed in equity, simply because it then appeared that that would be more advantageous to them; this, too, regardless of the fact as to whether or not plaintiffs had two distinct remedies, the one inconsistent with the other.

Without pursuing the matter further, we think that the judgment of the district court should be reversed and the cause remanded, with instructions to the district court to dismiss plaintiffs' suit at plaintiffs' cost, upon the defendants paying into court the sum of $1,000 for plaintiffs' use, within a reasonable time to be fixed by the court, and we so recommend.

CALKINS, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, with instructions to the district court to dismiss plaintiffs' suit at plaintiffs' cost, upon the defendants paying into court the sum of $1,000 for plaintiffs' use, within a reasonable time to be fixed by the court.

JUDGMENT ACCORDINGLY.