LEVI L. DAVIS, APPELLANT, V. FLOYD B. STERNS ET AL.,
APPELLEES.

FILED SEPTEMBER 25, 1909.  No. 15,742.

1. Parol Evidence: NOTES: CONSIDERATION. It is not error to submit
oral testimony to the jury to show the purpose for which a nego-
tiable promissory note was executed, where such note is sued on
by the payee named in the note.

2. ———: ———: ———. A and B purchased a tract of land and some
personal property jointly. A obtained from B the latter's nego-
tiable promissory note for $6,500 merely to show, in event of
death or other casualty happening to B, that the interest of A in
the property so purchased was of the amount of $6,500. *Held,* in
a suit by A against B to recover on the note its face value with
interest, that B could properly show the purpose for which the
note was given, and that it was executed without consideration.

APPEAL from the district court for Cherry county:
JAMES J. HARRINGTON, JUDGE. *Affirmed.*

*J. H. Broady, A. M. Morrissey* and *F. M. Walcott,* for
appellant.

*C. L. Gutterson* and *Sullivan & Squires, contra.*

DEAN, J.

Levi L. Davis, plaintiff and appellant, commenced this
suit to recover on a promissory note against the defend-
ants, who are husband and wife, for an alleged loan of
money. The execution and delivery of the note sued on
was admitted by defendants. Following is a copy of the
note: "Hyannis, Neb., June 23, 1902. Six months after
date, for value received, we jointly and severally promise
to pay to the order of L. L. Davis, six thousand five hun-
dred dollars, with interest at 6% per annum from date
until paid. The drawers and indorsers severally waive
presentment for payment, protest, and notice of protest,
and nonpayment of this note, and all defenses on the
ground of any extension of the time of payment that may

be given by the holder or holders, to them or either of them. F. B. Sterns, Minnie A. Sterns. Payable at the Bank of Hyannis, Hyannis, Neb. $6,500. Due ——. Hyannis. Col. No. 6177. Hyannis, Neb." The case was tried to a jury. The defendants recovered a verdict and judgment of dismissal, and plaintiff appeals.

The petition is in the usual form employed in declaring upon a promissory note. The defendants answered separately. Floyd B. Sterns for his answer alleges, in substance, that it was agreed between the plaintiff and himself that they would jointly purchase a ranch in western Nebraska, each to pay one-half of the purchase price, defendant to have the management and to reside on the ranch, and that each of the parties should have the right to run an equal number of cattle thereon; that the defendant was to have $50 a month as manager, one-half to be paid by plaintiff; that in February, 1902, they together went to Cherry county, and decided upon purchasing the Stansbie ranch or range, together with the horses, machinery, household goods and fences on adjoining lands belonging to the ranch; that the ranch consisted of 1,120 acres of deeded land, at the agreed price of $13,000, of this $8,000 was to be paid in cash and $5,000 to be a deferred payment evidenced by a note secured by mortgage on the ranch, to be given when title was perfected by Stansbie; that $500 was paid to Stansbie at the time of purchase, the remainder of the cash payment to be made when the title was completed by Stansbie; that the parties jointly and as partners took possession of the property on May 2, 1902, and it was then agreed each should have an undivided one-half interest in the property; that in June, 1902, plaintiff and Floyd B. Sterns agreed with Stansbie that $8,000 and the note and mortgage should be placed in escrow awaiting the completion of title; that for convenience, and because plaintiff's wife was in Richardson county, it was agreed the defendant Floyd B. Sterns and his wife should make the note and mortgage for $5,000, take title in defendant Floyd B. Sterns, and afterwards

convey to plaintiff an undivided one-half interest; that, in pursuance of the agreement, plaintiff deposited $6,500 in the bank at Hyannis in escrow, being his share of the purchase price, and Floyd B. Sterns deposited $1,500 in escrow, with the agreement that, when the title should be perfected, Sterns would execute a mortgage to Stansbie for $5,000 on the ranch; that Stansbie should then convey the ranch to Sterns; that after the mortgage was recorded the defendants were to convey to plaintiff an undivided one-half interest in the land; that, in pursuance of the agreement, defendant moved to the ranch with his family, and plaintiff and defendants took possession of the land; that plaintiff shipped over 100 head of cattle to run on the ranch in April, 1902, and afterwards by agreement came to the ranch, and purchased more horses to be used thereon, and stayed on the ranch with defendants, and made lasting improvements thereon; that he remained on the ranch until June 23, 1902, on which date the note in controversy was executed; that the plaintiff was then suddenly and unexpectedly called to return to Humboldt on urgent business affairs; that just prior to his departure he requested, and the defendants gave him, the note in suit as evidence of his interest in the ranch and other property; that Stansbie had not on June 23, 1902, yet procured complete title to all the land, and was therefore not in position to convey it; that the $6,500 deposited by plaintiff for his share of the purchase was yet in the bank awaiting completion of title; that plaintiff assured defendants he would surrender the note as soon as the title was perfected; that on or about June 27, 1902, the title being perfected, Stansbie and wife executed conveyances thereof to Sterns, and the defendants at the same time executed a note and mortgage on the ranch for $5,000 to Stansbie, and also executed and acknowledged a deed conveying to plaintiff his undivided one-half interest in the ranch, and immediately notified him thereof by letter, stating that they were ready and willing to deliver the deed to him; that about this time plaintiff became dissat-

isfied with the purchase; that plaintiff did not answer defendants' letter of notification, but remained silent until October, 1902, when he returned to the ranch, at which time the defendants again tendered to him a deed to his undivided one-half interest in all the property, and demanded a surrender of the note in suit; that plaintiff refused to accept the deed and refused to deliver to defendants the note sued on; that defendants are not liable for the note or any part thereof, and allege willingness to deliver to plaintiff a deed to an undivided one-half interest in all of the property.

The defendant Minnie A. Sterns alleges that she never had any estate of her own; that she signed the note merely as surety, not intending thereby to bind her separate estate; that the debt was not hers, and that she received no benefit or consideration for signing the note. She avers the statements of her codefendant are true; that all the conditions for the giving of the note to be performed by defendants have been performed; that the plaintiff procured the note through fraud and deceit; that at the time of its execution he intended to repudiate the agreement and to hold the note as an obligation against defendants, all of which was then unknown to them; that the defendants believed and relied on the statements of plaintiff, since discovered to be false; that he wanted the note solely to protect himself and his estate against loss in event of the death of defendants or anything unforeseen happening to prevent defendants from performance of their part of the agreement. Plaintiff's reply denied generally the allegations of new matter in the answers.

The weight of testimony fairly supports the material allegations of the defendants. The plaintiff is shown by the proof to have taken an active interest in the purchase of the ranch. He went with the defendant Sterns from Humboldt, where they both resided, in February, 1902, to the property, and together they examined it. He then returned to his home, and about May 1 plaintiff again went to the property, taking with him a large num-

ber of cattle to run on the range. He remained there until the 23d of June, when he was unexpectedly called to his home on urgent business. While he was on the ranch, from about May 1 until June 23, the proof shows he took an active part in the work and in the management of the property. He joined with the defendant in plans for remodeling the house and improving the property. The testimony fairly indicates he had a proprietary interest in the ranch. On April 14, 1902, a bill of sale of the personal property was made by the former owner from whom the ranch was purchased, which by its terms conveyed it to plaintiff and Sterns. The note in suit was executed by the defendants on June 23, immediately after plaintiff received the message calling him home, and the defendants testify it was executed solely to show plaintiff's interest in the property.

Witness Record, cashier of a bank at Hyannis in 1902, testified that about the 1st of June he assisted Stansbie in closing up the negotiations with plaintiff concerning the sale of the ranch, which were afterwards acquiesced in by Sterns. Witness Nickels wrote the deed from Stansbie to Sterns, and testifies his recollection is that plaintiff told him to name Sterns as grantee. Mr. and Mrs. Sheldon, who live near the ranch, testify that plaintiff stopped over night at their place when he was taking his cattle to the ranch in the spring of 1902, and that he then told them that he and the defendant Sterns were negotiating for the purchase of the Stansbie ranch. Mr. Unkefer, a real estate agent at Hyannis, who went with plaintiff and Sterns to the ranch, pending the purchase, testified that they seemed to be equally interested in its examination, and that the plaintiff made particular inquiry with reference to many features and details concerning the property. It is established that the defendants on two separate occasions tendered a deed to an undivided one-half interest in the ranch to plaintiff, and demanded the return of their note, and that he refused the tender and retained the note. The plaintiff on rebuttal denied much of

the testimony of defendants with respect to his deposit of $6,500. He testifies it was a loan made to defendants jointly.

In April, 1902, plaintiff wrote a series of letters to Sterns that appear to corroborate the testimony of the defendants and their witnesses. The letters are as follows:

"Humboldt, Neb., 4-11-92. Floyd, I think $13,000 would be enougf for the ranch but you can use your owe judgment you did not say anything about the horses and machinery, or whether it was to be surveyed or not, I think it should be surveyed and the government corners marked so we could tell what they were by the number. L. L. Davis."

"Humboldt, Neb., 4-12-92. Mr. Floyd Sterns, Hyannis, Neb. If the house is whare it is on the plots it is to far north to take in but 80 acres of the hay valley where the house is. I should think it would proper to have it surveyed and the government corners marked, then we could tell if the deeds covered the plot. You can get him to come down as much as you can. And let me know what it is. by all means be shure the deed covers the valleys he showed us. no guess work about it. do not sign a contract till you are certain. if it is surveyed you must take the numbers of the government corners and send them to me if it comes out all right I think we had better make a deal. All for this time. L. L. Davis."

"Humboldt, Nebr. 4-14-92. Floyd. I did not get your letter till after train time. I think it would have been better to have the deal made and a little money paid if he Allen was to scrip the valley as you wrote. * * * I expect you will have the surveying dun before I could get up there. if you think I had better come let me know and I will come. if you have made the deal and want some money joust you say so I will forward it promptly. Yours Res. L. L. Davis."

"Humboldt, Nebr. 4-22-92. Floyd. I thought I would write you in regard too the price you think we will charge for keeping cattle by the year. also for the summer seson.

How many do you think we had better take. Did you get anny out there. Do you think of being responsible for strays or stole. can you get the branding irons made out there, if there is no blacksmith in Hyannis I can get them made. You name how you want them made. I do not think of buying anny more cattle at present. You might invest in some. Yours Resp., L. L. Davis. Will we charge more for cows than we do for steers."

Much more testimony was adduced by defendants tending to still further fortify their contention, but no good purpose will be subserved by extending this opinion in its review.

The plaintiff argues that the trial court erred in permitting oral testimony to be introduced by the defendants to contradict the terms of the note sued on. It is elementary that an attempt to contradict, vary or change the terms of a written instrument by oral testimony, in the absence of fraud, accident or mistake, is not ordinarily permissible. But that is not the question before us. On this feature of the case the defendants merely sought to establish by oral testimony the real purpose for which they executed the note in suit. The trial court properly permitted them to do so. This court has long been committed to this salutary rule, and we can see no good reason for departing from it. *Walker v. Haggerty,* 30 Neb. 120, is in point. In that case the defendants offered testimony to show the consideration for which the note was given. This was held to be permissible. The court, speaking by NORVAL, J., said: "While parol testimony cannot be received to contradict the terms of the note, it was clearly admissible to show the true consideration for which it was given." A like principle was announced by MAXWELL, J., in the early case of *Collingwood v. Merchants Bank,* 15 Neb. 118. To the same effect are the following: *Cortelyou, Ege & Vanzandt v. Hiatt,* 36 Neb. 584; *Norman v. Waite,* 30 Neb. 302. See, also, *Morrow v. Jones,* 41 Neb. 867. In *Gifford v. Fox,* 2 Neb. (Unof.) 30, the court, speaking by DAY, C., held: "While parol testimony may

not be received to vary or contradict the terms of a promissory note, yet the consideration for which it was given may be established by parol testimony."

Plaintiff cites *State Bank v. Belk*, 56 Neb. 710, but the rule there announced is not properly applicable to the facts before us. There the note sued on in direct terms stated the purpose and the consideration for which it was given, an element that is lacking in the note sued on herein. In view of our uniform holding, we therefore conclude no error was committed by the trial court in permitting testimony to be introduced on the question relating to the purpose for which the note was given. From all the evidence it seems clear to us that the note in suit was given by defendants merely for the purpose of showing plaintiff's interest in the property, and that the jury were justified in finding that defendants received no consideration for the execution of the note. The facts in dispute were fairly submitted to the jury, and the verdict is abundantly sustained by the testimony. We find no error in the record, and no reason for disturbing the verdict can be discovered.

It follows, therefore, that the judgment of the district court must be, and it hereby is, in all things

AFFIRMED.