SAMUEL J. COFFMAN ET AL., APPELLEES, V. MATT MALONE, APPELLANT.

FILED OCTOBER 30, 1915. No. 18286.

Parol Evidence: SHAM CONTRACTS. Parol evidence is admissible to show that the parties to the suit had mutually agreed that a written contract which plaintiff is seeking to enforce was never to be performed, but was a mere sham executed for the purpose of influencing the conduct of a third person.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. Reversed.

Murphy & Winters, for appellant.

Smyth, Smith & Schall, contra.

MORRISSEY, C. J.

Amos Snyder, Matt Malone and Samuel J. Coffman owned all of the capital stock in a corporation called the Snyder-Malone-Coffman Company, which was doing a live stock commission business in South Omaha. During the fall of 1912, slight differences as to the conduct of the business arose, and December 12 the following writing was drawn up and signed by the parties:

"South Omaha, Neb., Dec. 12, 1912. We, Amos Snyder and S. J. Coffman, have this day sold our interest in the Snyder-Malone-Coffman Company to Matt Malone. The said Amos Snyder to receive $1,500 for his interest, and said S. J. Coffman is to receive $1,000 for his interest, and said business is to be turned over to Matt Malone on December 31, at 6 o'clock P. M., and all bills to be paid up to that time, that is, owed by the firm of Snyder-Malone-

Coffman Company, and, after the bills are all paid, each, Snyder and Coffman, can draw out the balance they have to their credit. Amos Snyder has received on this contract ($200) two hundred dollars, and S. J. Coffman has received ($100) one hundred dollars. This contract made and signed by Amos Snyder, S. J. Coffman and Matt Malone this 12th day of December, 1912.

> "Amos Snyder,
> "S. J. Coffman,
> "Matt Malone."

December 31, 1912, Snyder delivered his stock, tendered his resignation as president of the corporation, and received from Malone the balance due. Four or five days thereafter the articles of incorporation were redrafted and Coffman and Malone signed the same. Coffman made no assignment of his stock, and neither made nor tendered his resignation as an officer of the corporation until January 15, 1913, when he made an assignment of his stock and tendered the same, together with his resignation, to Malone, and demanded the amount stipulated in this writing. Malone refused to receive the stock or resignation or to pay over the money, and Coffman brought suit upon the contract.

Malone by answer alleged that the writing was executed for the sole purpose of purchasing the interest of Amos Snyder, but it was drawn in the form set out because they wanted Snyder to believe that Coffman was also retiring from the business; that there was a contemporaneous oral agreement between him and Coffman that, as between them, it was not to be performed; that there was no delivery of the writing to Coffman; and that the check which was delivered was not to be cashed, but was to be returned again by Coffman to Malone. There is an allegation, also, that after Snyder retired from the business, and after the expiration of the time fixed by this writing for the transfer of Coffman's stock, Coffman participated in the election of himself as secretary of the company, and that he continued to act for and in behalf of the company until January 15, 1913; that under their oral agreement Malone

was to transfer certain of Snyder's shares of stock to Coff-
man, which Malone was ready and willing to do, but Coff-
man did not have the money to pay therefor, and, upon
Malone's refusal to accept Coffman's note in lieu of cash,
Coffman attempted to repudiate the oral agreement and
to enforce this writing.

A jury was waived and the cause tried to the court. Oral
testimony was admitted in support of the allegations of
the answer. But at the conclusion of the trial, on motion
of the plaintiff, the court struck from the record the testi-
mony which had been received in proof of the oral agree-
ment, and entered judgment for plaintiff for the amount
due under the writing. There are three assignments of
error; but, as the one directed against the ruling of the
court in striking this evidence goes to the merits of the
whole controversy, it is the only one we will consider. If
the ruling in that regard is correct, the judgment is war-
ranted by the pleadings and the proof. No doubt the court
relied upon the general rule laid down in *Mattison v. Chi-
cago, R. I. & P. R. Co.*, 42 Neb. 545, and quoted as au-
thority in *Nebraska Land & Feeding Co. v. Trauerman*,
70 Neb. 795, wherein it is held: "Parol evidence is incom-
petent to prove a contemporaneous oral agreement by which
it is sought to change or alter the terms of a written con-
tract and the result of which would be to change the effect
of the written contract in a material portion and to insert
or read into it a condition or reservation not contained
in it, or implied by its terms"—while the appellant con-
tends that the rule invoked does not apply, and that a
party who has been induced to sign a written contract
for a certain purpose is entitled to offer oral testimony,
not for the purpose of varying its terms, but for the pur-
pose of showing that it was never intended to be a con-
tract or to be of binding force between the parties. It is
not contended that the contract is ambiguous or incom-
plete, but that plaintiff and defendant were working to-
gether for a common purpose; that, in furtherance of this
common purpose, it was executed in its present form; that
they were not dealing one with the other, but were jointly

dealing with Snyder; that, in the very nature of things, the writing could not contain the agreement between Coffman and Malone, because that would defeat its purpose. If there was no intention on the part of either party to observe the terms of this writing, as between them, this writing was not the contract.

This evidence was not offered with the view of contradicting, varying, or explaining the language employed in the written instrument, but to establish a fact or circumstance collateral to the original writing which would control its effect or operation as a binding engagement. On either theory the writing is precisely what both parties intended it to be. If there was an express agreement between Coffman and Malone that it was not to be carried out, Malone in signing was acting, not alone for himself, but also for the plaintiff, and in that event it never became a binding obligation. "The existence of a written contract or instrument, duly executed between the parties to an action and delivered, does not prevent the party apparently bound thereby from pleading and proving that contemporaneously with the execution and delivery of such contract or instrument the parties had entered into a distinct oral agreement which constitutes a condition on which the performance of the written contract or agreement is to depend." *Norman v. Waite,* 30 Neb. 302.

In *Barnett v. Pratt,* 37 Neb. 349, in discussing a somewhat similar question, the court said: "It is settled by a considerable line of authority that where the execution of a written agreement has been induced upon the faith of an oral stipulation made at the time, but omitted from the written agreement, though not by accident or mistake, parol evidence of the oral stipulation is admissible, although it may add to or contradict the terms of the written instrument."

The doctrine laid down in *Norman v. Waite, supra,* has been reiterated in *Davis v. Sterns,* 85 Neb. 121, *First Nat. Bank v. Burney,* 91 Neb. 269, and *Exchange Bank v. Clay Center State Bank,* 91 Neb. 835, and is the settled rule in this state.

This evidence having been erroneously stricken from the record, it follows that the judgment of the district court must be reversed and the cause remanded.

REVERSED.

FAWCETT, and HAMER, JJ., not sitting.

ROSE, J., concurring.

The question presented by the record seems to be: Is parol evidence admissible to show that the parties to the suit had mutually agreed that a written contract which plaintiff is seeking to enforce was never to be performed, but was a mere sham executed for the purpose of influencing the conduct of a third person? The question is a sensitive one, because an error in its solution may result either in a departure from the rule which forbids the use of parol evidence to vary a written instrument or in rewarding a wrong by closing the door to judicial scrutiny. The supreme court of Vermont has answered the question in the negative. *Conner v. Carpenter*, 28 Vt. 237; *Town of Grand Isle v. Kinney*, 70 Vt. 381. The better reasoning, however, and the weight of authority seem to be to the contrary.

In 4 Wigmore, Evidence, sec. 2406, it is said: "Conduct which is to be given legal effects must be jural in its subject * * * i. e. must concern legal relations, not relations of friendship or other nonlegal relations. * * * In all such cases, therefore, the conduct is legally ineffective, or void. In the traditional phraseology of the parol evidence rule, then, it may always be shown that the transaction was *understood by the parties not to have legal effect*. Ordinarily, the bearing of this principle is plain enough on the circumstances. It has been judicially applied to household services rendered by a member of the family, and to a writing representing merely a family understanding. It is, of course, also applicable to the signature of an attesting witness. When the document is to serve the purpose of a mere *sham*, this principle in strictness exonerates the makers; but a just policy would seem to concede this only when the pretence is a morally justi-

fiable one (as, to calm a lunatic or to console a dying
person), and not when it is morally beyond sanction."

In *Southern Street Railway Advertising Co. v. Metropole
Shoe Mfg. Co.,* 91 Md. 61, a suit upon an advertising con-
tract, defendant pleaded that the "paper-writing was not
intended to create, and did not create, any legal relation-
ship whatsoever; that said paper was signed by the defend-
ant upon the request of plaintiff's agent, in order that the
plaintiff or its agents might show the same to other per-
sons dealing with the plaintiff, in order to induce such
other persons to pay the rates for advertising mentioned
in the contract, and that it was distinctly understood that
the paper-writing was not a contract between the parties
thereto, and that the bringing of a suit thereon is a fraud
upon the defendant." The court said: "The rule against
parol evidence to vary or contradict the terms of an agree-
ment in writing is well settled by the courts. It is earnestly
insisted upon the part of the appellee that this rule has
no application to this case, because the testimony was of-
fered, not for the purpose of varying or contradicting the
contract, but to show that the parties to the writing never
intended it to be a contract or as the binding record of a
contract. We think the court below was right in admitting
the evidence. * * * We come then to the evidence as
set forth in the bills of exception, and we think it is clear
that it was competent for the purposes offered, that is,
not to vary or contradict the terms of the written instru-
ment by parol, but to show that such contract had no force,
efficacy or effect, because it was not intended to operate as
the record of a binding contract between the parties."

In *Colonial Park Estates v. Massart,* 112 Md. 648, the
court approved and followed the preceding case, saying:
"Although parol evidence is inadmissible to vary or con-
tradict the terms of a written agreement, it is well settled
that such evidence is admissible to show that a particular
written paper 'was never intended as a contract or the
binding record of a contract between the parties.' And
this has been held to be true even though the paper-writ-
ing in question be in the form of a contract and bear the

signatures of those named in it as the contracting parties. We distinctly held this to be the law upon the authority of many cases, both English and American, cited by us in the *Southern Street Railway Advertising Co. v. Metropole Shoe Mfg. Co.*, 91 Md. 61. The supreme court of the United States in *Burke v. Dulaney*, 153 U. S. 228, upon a review of the cases upon this subject, reached the conclusion there stated in its opinion that, 'The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time the suit is brought. But the rule has no application if the writing was not delivered as a present contract,' and parol evidence was admissible to show that there never was any concluded, binding contract entitling the party who claimed the benefit of it to enforce its stipulations." See, also, *Birely & Sons v. Dodson*, 107 Md. 229.

In *Humphrey v. Timken Carriage Co.*, 12 Okla., 413: "The defendant offered evidence to show that the order for the goods, which is made the basis of plaintiff's action, was given at the solicitation of the plaintiff's agent, Slusser, who represented that he had sold a car-load of goods to B. F. Berkey, but that Berkey was involved financially and it was feared that a shipment to Berkey would involve the Timken Carriage Company with other creditors; that if he, Humphrey, would sign the order for the goods, he would not be held liable for them; that it would be used only for the specific purpose of enabling the Timken Carriage Company to sell and ship goods to Berkey without danger of having them attached by other creditors; and that the order was signed for this and for no other purpose." The court sustained the defense, saying: "Admitting that the order so signed was a contract in writing, was it not competent to prove that it was not intended as such, and was in fact executed and delivered for an entirely different and specific purpose? Under the law, as generally accepted and enforced in this country, parol evidence is not competent to change or vary a written agreement; but when does a writing become an agreement? Certainly not until it is assented to in the sense that its

tenor purports. As between the parties, a written instrument which is understood to have a particular import and meaning cannot by one of the parties thereto, without the knowledge or consent of the other, be so diverted from the purpose of its execution as to fix other and new liabilities not contemplated when made. Such a construction of the law wholly destroys the definition which time-honored customs and rules have given to contracts, to wit, that two minds must meet and consent."

In *Grierson v. Mason,* 60 N. Y. 394, defendant offered proof that a contract relied upon by plaintiff was not intended to be a contract between the parties, but was executed to enable defendant to procure advances upon goods, and that the contract was delivered to the party making the advances. The court said: "The object of the testimony was to show that the instrument was executed for a specific purpose, and, that purpose being accomplished, was of no effect in changing the contract previously made with the defendant. I think that it was competent evidence for this purpose. The defendant had made out a contract. The plaintiff proved an instrument which altered the contract, and the defendant had a right to prove that the instrument introduced was not intended as an alteration of the contract, but with a view of accomplishing a particular purpose. Such evidence was not given to change the written contract by parol, but to establish that such contract had no force, efficacy or effect; that it was not intended to be a contract, but merely a writing to be used in inducing Woods to make advancements upon the goods. This is in avoidance of the instrument, and not to change it, and I do not see why the testimony was not as competent in this case as it would be to show that a written instrument was obtained fraudulently, by duress, or in an improper manner. Such evidence does not come within the ordinary rule of introducing parol evidence to contradict written testimony, but tends to explain the circumstances under which such an instrument was executed and delivered, or to show that it was canceled or surrendered."

In *Oak Ridge Co. v. Toole,* 82 N. J. Eq., 541, the defendant to the bill in equity answered that the contract to purchase the lands was entered into merely for "selling purposes." The court said: "He rests his 'defense upon the ground that the agreement, while signed by his client, was to have no binding effect upon him. I think his position is well taken and I agree with his view of the case. In *O'Brien v. Paterson Brewing & Malting Co.,* 69 N. J. Eq. 117, practically all the questions involved in this issue are thoroughly and exhaustively discussed by the learned vice-chancellor. This case, it seems to me, establishes the rule, that if the parties to an agreement stipulated at the time that it was made that it was to have no binding effect upon them, then, notwithstanding their execution of the agreement, such a contract. is of no force and effect at law or in equity. The rule now so well established in equity, admitting parol evidence to show for what purpose the written agreement was executed, was properly invoked by the defendant. The evidence leaves no doubt in the court's mind that in this issue the agreement between the complainant and the defendant was made for the purpose as stated by the latter and his witnesses. It is inequitable and unjust, therefore, for the complainant to enforce the agreement of April 13."

*Western Mfg. Co. v. Rogers,* 54 Neb. 456, appears to hold that the evidence is inadmissible, but is distinguishable. This case is cited and followed in *State Bank of Ceresco v. Belk,* 56 Neb. 710, where *Burke v. Dulaney,* 153 U. S. 228, quoted in the Maryland decisions, is distinguished on the ground that there "never was any complete final delivery of the writing as the promissory note of the makers payable at all events and according to its terms." The distinction between the Nebraska cases cited and the present case is pointed out in 4 Wigmore, Evidence, sec. 2435, where it is said: "An extrinsic agreement providing a *condition qualifying the operation* of a written obligation is of course equally ineffective; for an obligation absolute is plainly exclusive of a condition. So far as the present principle is concerned, there is no

doubt. But by the general principle of delivery (*ante,* sec. 2410) no conduct becomes effective as a legal act if its consummation is suspended until the happening of a condition precedent; and, hence, such a condition, precedent to the existence of the obligation, may always be established, and has the effect of destroying the apparent obligation of the writing embodying the draft of the act. The difficulty is to distinguish whether, in a given case, the condition is such a precedent one, or whether it is a subsequent one such as the present principle forbids recognizing. Here some subtlety of construction may be required."

In a note the author says: "Sometimes, the illustrations of this principle, that a transaction which is a *sham* is without the scope of legal acts, are hard to distinguish from those cases where the transaction is in substance a legal one, but the understanding is that it shall be merely *nominal;* here, in effect, one party agrees to hold the other party harmless, and this involves rather the rule about varying a document's terms." 4 Wigmore, Evidence, sec. 2406.

The opinion delivered by the chief justice is supported by the weight of authority and is in harmony with the holding in *Davis v. Sterns,* 85 Neb. 121. I therefore concur.