MARIE AMELIA BLUM, APPELLANT, v. WILLIAM F. C. POPPENHAGEN ET AL., APPELLEES.

5 N. W. (2d) 99

FILED JULY 31, 1942. No. 31389.

6

*John H. Thomsen* and *Carl T. Self*, for appellant.

*Mitchell & Gantz* and *D. E. Williams*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action to secure the possession of certain real estate in Grant county. Plaintiff appeals from a judgment in favor of the defendants.

Plaintiff brought this action in district court alleging that on February 15, 1935, the defendants by warranty deed conveyed a section of land in Grant county to John Blum, a resident of Douglas county; that the deed was recorded August 10, 1936; that by virtue thereof John Blum became seised of a fee simple title to the land "together with the right of possession;" that Blum was plaintiff's husband; that he died July 8, 1939; that by the provisions of his will, duly probated, plaintiff became the owner of the legal title to the

land and entitled to the possession thereof, and that the defendants keep her out of possession. Plaintiff prayed judgment for possession.

Defendants by answer admitted the death of John Blum and denied generally. Further answering, they alleged that John Blum on the 14th day of February, 1935, entered into a written agreement with them, whereby defendants were given the exclusive right to possession of said premises during the lifetime of the defendant William F. C. Poppenhagen, subject only to the condition that defendants pay the taxes and keep the improvements in repair; that they have performed the conditions of the agreement and are entitled to the use and possession of the premises; that the agreement by mutual mistake erroneously described the land by referring to its location as "east of Fifth (5th) P M" when it should have been west of the sixth principal meridian; that the defendants were in actual possession of the real estate on February 14, 1935, and have since been in possession with the knowledge and acquiescence of John Blum under the agreement. Defendants pray for the dismissal of plaintiff's petition, for costs and for such other relief as may be "just, equitable and proper." Plaintiff for reply denied generally.

The parties and the trial court apparently considered the matter as an equity case, and so tried it. That being the theory on which it was tried, we will so consider it here.

The evidence discloses that the defendants, husband and wife, or one of them, were the owners of three adjoining sections of land mortgaged by separate instruments to John Blum, who was a brother of Mrs. Poppenhagen. The mortgages were in default. On February 14, 1935, the defendants, by separate instruments, conveyed the land to John Blum. The deed to the land here involved is the usual deed form. It recited a consideration of "payment of mortgage" (citing where recorded) and "other valuable consideration." In the printed portion of the deed is the language that the premises "are free from encumbrance," followed in typewriting by "no exceptions." The agreement, to which refer-

ence is made in the answer, is entirely typewritten, except as to the day of the month when it was executed. It recites that the defendants have "this day sold" the three sections of land to John Blum. It sets out and refers to the three separate mortgages on each section and recites the total amount due. Then follow these four paragraphs.

"It is agreed by and between the aforesaid parties that in consideration of the first parties having conveyed the foregoing described property to the second party that for a period of five years from this date or until February 15, 1940, said first party is given the option to buy back this land for $11,150, or any section referred to by paying to second party the amount of the mortgage that was held by second party as mortgage on that particular tract before the executions of the deeds referred to.

"It is also agreed by and between the aforesaid parties that the second party is to receive all income from the date of the signing of this instrument from sections 11 & 12 so that in the event of sale of the above described land the income to first party being in lieu of interest that he may have been entitled to.

"It being agreed by and between the foregoing parties that first party reserves the right, and this being agreeable to the second party, that first party may live on said section 2 during the natural lifetime of William F. C. Poppenhagen so long as said first party pays the tax and keeps up the improvements in as good repair as they now are or any time during the life of this agreement.

"It is understood that said sections 11 & 12 have been rented for the year 1935 commencing March 1 and expiring March 1, 1936, and said second party to receive any and all income due the landlord on account of said lease. The lease referred to being only verbal the first party relinquish to second party all rights to rentals and said second party shall be entitled to collect any unpaid share of rent or cash rent as the case may be, that may be forthcoming or due after February 15, 1935, or any time thereafter."

At the same time that the deed was executed and ac-

knowledged, the agreement in question was signed by the defendants, and in accord with Blum's request and direction. The deed is on a Douglas county form. The deed and contract were executed in Grant county. The date of the execution of both instruments is left in blank and filled in by pen and ink. It also appears that John Blum had signed the agreement before the instruments were sent to the Poppenhagens. The defendants testify that they would not have signed the deed had the contract not been made. The evidence of William F. C. Poppenhagen is that Blum sent these papers to the defendants for signature. The deed, after being executed, was then mailed to John Blum in Douglas county. The agreement was recorded on August 1, 1940, after the filing for record in Grant county of the probate proceedings in the Blum estate.

There is no question but that the defendants at all times since, and for some time prior to, the execution and delivery of the instruments here mentioned have been in possession of the real estate and maintaining their home on the land. They have also paid the taxes and kept the improvements in repair and added thereto.

The plaintiff testifies that she knew nothing of these matters until after the decree in the probate proceeding when she sought possession of the property and it was refused

The mistake in the description of the land in the contract is conceded by the plaintiff.

The trial court found generally and specifically for the defendants; dismissed plaintiff's petition, and held that the defendants have the right to live upon the land during the lifetime of defendant William F. C. Poppenhagen so long as they pay the taxes and keep the improvements in repair as provided in the agreement.

It is patent that it was the intention of John Blum and the defendants that the defendants were to have the right of possession which they claim. Is there any reason in the law why it should be denied to them?

Section 76-109, Comp. St. 1929, provides: "In the construction of every instrument creating or conveying, or

authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected, from the whole instrument, and so far as such intent is consistent with the rules of law."

This deed and contract are to be considered subject to the rule that, "In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance." *Thompson v. Jost,* 108 Neb. 778, 189 N. W. 169. See, also, *Nebraska Wheat Growers Ass'n v. Smith,* 115 Neb. 177, 212 N. W. 39.

The two instruments when construed as one contract are also subject to the established rule restated by this court in *Ericson v. Nebraska-Iowa Farm Investment Co.,* 134 Neb. 391, 278 N. W. 841, which is: " 'Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it.' *Flory v. Supreme Tribe of Ben Hur,* 98 Neb. 160, 152 N. W. 295."

So construed, it is clear from the instruments that John Blum took the conveyance subject to the reserved right of these defendants to "live on" the land so conveyed "during the natural lifetime" of William F. C. Poppenhagen, provided they paid the taxes and kept up the improvements. That such was their intention is well illustrated by the fact that from February, 1935, until John Blum's death in July, 1939, they did exactly that thing. The record is silent of any protest by John Blum during that period of over four years.

The plaintiff argues that the words "no exceptions" following the words "free from encumbrance" negative any

such construction.   The words "no exceptions" appear in that part of the deed form where normally references are made to encumbrances running from the title holder to third parties.   Under the circumstances here existing they cannot be construed to cover a reservation of the grantors in themselves.

Plaintiff argues that the "life estate reservation must appear" in the deed, citing *Federal Farm Mtg. Corporation v. Fischer,* 137 Neb. 559, 290 N. W. 444, and *Hylton v. Krueger,* 134 Neb. 66, 277 N. W. 792.   Both cases involve annuities.   In both cases the deed and the contract were construed together.   In the *Fischer* case the deed did not purport to reserve any rights in the grantor and made no reference to any other instrument.   Thus far there is a similarity between the *Fischer* case and the instant case.   However, it ends there.   In the *Fischer* case the separate agreement constituted a promise to pay the grantor a fixed amount of money every six months.   There was no reservation in the deed nor language in the separate instrument effectual to create a lien or reserve a right.   There was a promise to pay cash; here there is a reserved right of possession. Plaintiff relies upon the language in the opinion that, where "the deed itself contains no provision for payment of an annuity and no specific reference to the contract by which such an obligation may at the same time have been created, there can be no reservation."   This language must be considered in the light of the facts of the case there being determined. The plaintiff overlooks the third following sentence that, "Since no reservation is involved, the language used in the agreement must be such as would be sufficient in any independent instrument to create a lien on the property."   In the instant case plaintiff does not question the fact that the "language used in the agreement" is sufficient to establish the reservation of possession.   In *Hylton v. Krueger, supra,* a reservation was held to exist where a deed and a contract for an annuity were executed simultaneously as part of the same transaction and the contract was specifically referred to in the deed so as to constitute a part of it.   We do not

understand how either of these cases can be of assistance to the plaintiff.

Plaintiff submits that she was not a party to this transaction, knew nothing of it, and that her property rights as a wife could not be affected by the contract. So far as this controversy is concerned, it was not necessary that plaintiff be a party to the transaction. By the contract her husband conveyed nothing to the defendants. The defendants reserved a right of possession which did not pass with the title. The contract states that defendants "reserve the right." John Blum did not secure that right of possession. The plaintiff has no cause to complain because of the contract which her husband made. It is also noted that plaintiff by her answer claimed title as beneficiary under John Blum's will, which devised to her all real property "of which I die possessed." The source of plaintiff's title is in John Blum's title. She has no greater title than that which he had. He had title subject to the reserved rights of the defendants. She received title subject to that same burden.

Plaintiff further argues that the contract was not witnessed nor acknowledged as required by law, so as to entitle it to be recorded, and that in any event the will under which she claims was duly probated and a certified copy of the proceedings recorded in Grant county before the contract was recorded. This land was not the homestead of the Blums. It has long been the rule that "A deed to real estate, executed and delivered, is valid between the parties, though not lawfully acknowledged nor witnessed, and is sufficient to convey the land described therein, with the exception of the homestead of the grantor." *Wilson v. Wilson*, 85 Neb. 167, 122 N. W. 856. The defendants were in possession of the land at all times. It has long been the rule that possession of land is notice to the world of the possessor's rights therein and of all interests of which inquiry of the possessor would elicit knowledge. *Blum v. Voss*, 139 Neb. 233, 297 N. W. 84. Here no inquiry was made of the defendants until plaintiff demanded possession. She was then advised of the interest which they claimed.

The particular paragraph of the contract involved herein is the third quoted paragraph. Plaintiff[2] argues that there was no consideration for the contract. The deed recites a consideration as the payment of the mortgage and "other valuable consideration." Certainly the conveying to the mortgagee of the legal title of lands, even when encumbered for their value, together with the surrender of rents and other valuable rights, is a sufficient consideration to support a contract such as the one here involved. But plaintiff argues that the recital of the consideration is found only in the paragraph dealing with the option, that it is not found in the paragraph upon which the defendants rely, and that hence that covenant is without consideration. The contract is not subject to any such restricted construction. The consideration is recited in the first paragraph, at the beginning of the recital of the covenants of the contract. It applies alike to all the covenants.

The judgment of the trial court is

AFFIRMED.