A. E. BRADWAY ET AL., APPELLANTS, v. DAN HIGGINS. APPELLEE.

42 N. W. 2d 627

Filed May 12, 1950. No. 32765.

*Dryden, Jensen & Dier,* for appellants.

*Blackledge & Sidner,* for appellee.

Heard before CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law to recover a down payment on a written contract entered into between the plaintiffs and defendant wherein the plaintiffs agreed to purchase the garage equipment, parts, tools, and supplies including a service car, from the defendant. The parties admit the execution of the contract and the payment of $500 as a down payment when the contract was entered into.

The plaintiffs' petition does not have attached to it a copy of the contract as an exhibit, but pleads certain terms of the contract which will hereinafter be discussed.

The plaintiffs' petition alleged that the defendant breached and violated the contract by selling and depleting the stock and equipment so that it was impossible to make performance thereof on his part; by refusing to inventory the merchandise in the garage at dealer's cost or to allow the plaintiffs to make such inventory; by insisting upon valuing certain items of merchandise and equipment at more than cost; by refusing to tender good and sufficient title by furnishing an affidavit under the Bulk Sales Act; and prayed for recovery of $400 and costs.

The defendant's answer denied that he sold and depleted the stock, equipment, or supplies other than ordinary and in the usual course of business, and which was contemplated by the contract. Defendant alleged that replacements and new purchases were made at all times, and there was on hand a complete stock of

equipment and supplies of the general nature and equal in value and usefulness of that on hand at the time the contract was made; alleged further that the plaintiffs repudiated the contract, did not tender the amount due thereon or offer to perform according to the terms of the contract; denied generally all other allegations of the plaintiffs' petition; and prayed for dismissal of the plaintiffs' petition.

At the conclusion of all of the testimony the trial court sustained the defendant's motion for a directed verdict on the grounds that the allegations of the petition were insufficient to state a cause of action, and the evidence was insufficient to sustain a verdict in favor of the plaintiffs.

Upon the overruling of the plaintiffs' motion for a new trial, the plaintiffs appeal.

For convenience we will refer to the parties as they were originally designated in the district court.

The plaintiffs predicate error upon the trial court's judgment holding that plaintiffs' petition did not state a cause of action and that the evidence was insufficient to support a judgment in favor of the plaintiffs.

With reference to the question as to whether or not the plaintiffs' petition states a cause of action, it is noted that the defendant first interposed objection to the petition on the ground it did not state a cause of action after the jury was impaneled and a witness sworn. It appears also from the record that the contract between the parties is in evidence.

In the state of the record, the following authority is applicable: "Where an objection that a petition does not state a cause of action is interposed for the first time during the trial of a cause, * * * the pleading will be liberally construed in the light of the entire record, and, if possible, sustained. In such case, if the essential elements of plaintiff's case may be implied by reasonable intendment from the terms of the pleading assailed, they will be regarded as sufficient-

ly alleged." Dickinson v. Lawson, 125 Neb. 646, 251 N. W. 656. See, also, Elvidge v. Brant, 131 Neb. 1, 267 N. W. 169.

From an examination of the petition, and applying the rule as above stated, we conclude the petition is sufficient to state a cause of action.

This brings us to the assignment of error as to whether or not the evidence is sufficient to support a verdict in favor of the plaintiffs.

The court having sustained the defendant's motion for a directed verdict, we review the evidence with the following rule in mind: "A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed." Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902.

We deem it advisable before setting forth the facts adduced by the record to refer to the contract between the plaintiffs and defendant. The contract was entered into on March 7, 1948. It provided that the plaintiffs agreed to purchase the garage equipment, parts, tools, and supplies including a service car the property of the defendant located at Elm Creek, Nebraska, the defendant to furnish good and sufficient title. The plaintiffs agreed to pay "A maximum of not more than $3750.00 A minimum of not less than $3500.00 Payments to be made as follows:—$500.00 (Check and Cash) payment with contract Balance due and payable After April 1st., 1948 with option to make final settlement up to May 15th., 1948. Possession is to be given as soon as final payment is made and purchasers are to give Owner at least five days notice before possession can be given." The penalty clause provided that in the event of defective title the $500 down payment was to be refunded to the plaintiffs, otherwise the defendant was entitled to the $500 down payment as liquidated damages for failure of performance on

the plaintiffs' part to carry out the terms of the contract.

The record discloses that the plaintiffs A. E. Bradway and Clarence Lammers were desirous of forming a partnership and entering the garage business. We will hereafter refer to the plaintiff A. E. Bradway as Bradway, and the plaintiff Clarence Lammers as Lammers, or as plaintiffs. On March 1, 1948, the plaintiffs contacted the defendant Dan Higgins, who will hereafter be referred to as Higgins, who owned garage equipment, tools, supplies, and a service car at Elm Creek, Nebraska. At that time the plaintiffs looked over the defendant's stock and discussed the terms of a contract with him. They next contacted Higgins March 7, 1948, and entered into the contract heretofore described and made a $500 down payment as provided for in the contract. On March 24, 1948, plaintiffs endeavored again to contact Higgins, but failed. They looked over the stock and equipment, and testified that it had been depleted to the extent that it was insufficient to amount to the minimum as provided for in the contract. On May 2, 1948, the plaintiffs and Higgins took an inventory. Bradway took down the figures as Lammers and Higgins called off the prices of the different items. There was disagreement with reference to some 1928, 1929, 1930, and 1931 Chevrolet radiators and some old car seats and bearings which Higgins wanted to include in the inventory in the amount of $350. The plaintiffs contended that this merchandise was junk, and they offered $100 for it. After the inventory had been completed, the plaintiffs took it with them. Bradway, by comparison with the cost figures of items in a parts book and other sources, determined the items as inventoried would be in excess of the cost price or what Higgins paid for them, and made this showing on the inventory. The inventory was not admitted in evidence for the reason that it did not reflect a true inventory of the stock.

On May 5, 1948, the plaintiffs contacted Higgins again

and requested that he furnish an affidavit under the Bulk Sales Act, which he declined to give.

Bradway testified that he was able and willing to perform the contract but due to disagreement between the parties as to the prices of items he told the defendant the deal was off.

Lammers corroborated the testimony of Bradway, and it appears from the plaintiffs' figures with reference to the inventory of May 2, 1948, that taking the defendant's figures, the total amount of the merchandise was $3,319.61, or approximately $200 below the minimum price they were to pay as provided for by the contract. This excluded the $350 item which the plaintiffs classified as junk. The inclusion of this item at $350 would show the inventory from the defendant's viewpoint to be approximately $3,650. The plaintiffs' figures were $2,763.42. Lammers testified further that on May 5, 1948, when the deal was called off, Higgins followed him home and offered to sell the garage business to him for $3,000, and returned $100 of the down payment to him.

Higgins testified with reference to the contract that the amount would be $3,500, or to the extent of $3,750, depending upon the inventory at the time possession was taken, but in no event would the amount be less than $3,500. He further testified that prior to the date the contract was entered into he had an inventory made and the items contained therein were checked by the plaintiffs. This inventory was either lost or destroyed. With reference to the inventory of May 2, 1948, the values he placed on the items were from his memory or from what invoices he could find. He further testified that the plaintiffs became dissatisfied and called the deal off. They demanded of him an affidavit under the Bulk Sales Act. He denied that he refused to furnish good and sufficient title or an affidavit under the Bulk Sales Act after he had ascertained the full purport and meaning of such affidavit.

He testified further that he kept· the deal open until the final date of performance, May 15, 1948, and would have performed his part of the contract. On May 17, 1948, he sold the equipment and merchandise to one DeSelms for a total of $3,500. He admitted returning $100 to Lammers because Lammers had contacted him and told him he had borrowed the money, and he returned this amount out of sympathy.

DeSelms' testimony is to the effect that he purchased the garage and consummated the deal on May 17, 1948; that the $350 item heretofore referred to upon which there was a controversy was included in the deal, not separately inventoried; and that the inventory of the defendant at that time showed approximately $3,600 worth of merchandise.

It will be noted that the contract is ambiguous and difficult to construe. In such a situation the following authorities are applicable: " ' "Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it." ' " Blum v. Poppenhagen, 142 Neb. 5, 5 N. W. 2d 99. See, also, Flory v. Supreme Tribe of Ben Hur, 98 Neb. 160, 152 N. W. 295.

"Parol evidence is generally admissible when it is offered for the purpose of explaining and showing the true nature of the transaction between the parties. Such evidence is not offered for the purpose of varying the terms of a written instrument between the parties." Brock v. Lueth, 141 Neb. 545, 4 N. W. 2d 285. See, also, Davis v. Sterns, 85 Neb. 121, 122 N. W. 672; Spangenberg v. Losey, 116 Neb. 112, 216 N. W. 191.

With the foregoing authorities in mind, it is apparent from the evidence that the parties to the contract intended that an inventory of the stock would be taken and the amount as shown by such inventory would not

be less than $3,500, the inventory to be based upon the cost price of the items to the defendant. It is also apparent that the defendant was not to deplete the stock, equipment, or supplies other than ordinary in the usual course of business, and would be required to make replacements and new purchases from the date the contract was entered into until the date of performance thereof so that at all times there would be on hand a complete stock of equipment and supplies of the general nature and equal to the value and usefulness of that on hand at the time the contract was made.

It is apparent that the plaintiffs' contention is that Higgins refused to inventory the merchandise at the proper price paid by him; that he depleted the stock of merchandise below the minimum as required by the contract and thereby breached the contract so that he could not perform it; that he declined to furnish good and sufficient title or to give an affidavit under the Bulk Sales Act; and that he refused to adjust his prices to the real cost that the dealer would pay for such merchandise. It is also apparent that the defendant's contention is that he did not deplete the stock of merchandise as contended for by the plaintiffs, but replenished the stock by purchasing separate items between the date of execution of the contract and the date of performance, which items went back into the stock. These items total a trifle in excess of $1,200.

There is no sufficient or competent evidence appearing in the record to disclose that the defendant depleted the stock of merchandise from the date the contract was entered into until the date of performance thereof below the minimum of $3,500 as provided in the contract. As heretofore pointed out, there is evidence on a subsequent sale that the stock of merchandise inventoried at more than $3,500, and was sold for $3,500.

While the trial court was in error in holding that the plaintiffs' petition did not state a cause of action, the

judgment of the trial court in directing the verdict in favor of the defendant upon the insufficiency of the plaintiffs' evidence to submit the cause to the jury was correct and requires affirmance of the trial court's judgment in such respect.

AFFIRMED.

SIMMONS, C. J., participating on briefs.