Myrtle Fitzsimons, appellee, v. Virginia R. Frey, appellant, Wyona Frey, appellee.

43 N. W. 2d 531

Filed July 19, 1950. No. 32769.

*Max Kier* and *Charles Bocken,* for appellant.

*William L. Walker, Earl Ludlam,* and *Leonard Dunker,* for appellee Fitzsimons.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a replevin action instituted by the plaintiff against the defendant to recover certain personal property, for the purposes of this appeal, described as a pair of candelabra or branch candlesticks. The plaintiff's amended petition alleges that she is the owner of one pair of large, tall grape candelabra, is entitled to the immediate possession of the same, and that said property is wrongfully and unlawfully detained by the defendant. The defendant's answer is a general denial.

The cause was tried to a jury resulting in a verdict finding that at the commencement of the action the right of possession of the personal property in controversy, to wit: One pair of large grape candelabra, was in the plaintiff, and assessing damages against the defendant in the amount of one cent. The defendant Wyona Frey was dismissed out of the action, the evidence being insuf-

ficient to show that she was involved in the controversy.

Upon the overruling of the defendant's motion for new trial, defendant appeals.

For convenience we will refer to the parties as originally designated in the district court.

The defendant predicates error on the trial court's part in not instructing a verdict for the defendant as requested by defendant's tendered instruction No. 2. We examine the record to determine whether or not the trial court erred in such respect.

The record shows that on December 3, 1947, through a real estate agency, an appointment was made for the plaintiff to meet the defendant and her daughter Wyona at the defendant's home with a view to exchanging real estate properties. While the plaintiff was inspecting the interior of the defendant's home she saw and inspected a pair of grape candelabra which were sitting on the dining room table. The plaintiff testified that the defendant, talking with reference to the exchange of properties, stated that she wanted $85,000 for her property just as it stood. From that date until April 4, 1948, the plaintiff was in the defendant's home a number of times, and each time the candelabra were on the dining room table.

On the evening of April 3, 1948, the defendant called the plaintiff, saying in effect that she and the plaintiff could make their own agreement about the furnishings the way they wanted it, as they understood each other. Pursuant to arrangements made at that time, the plaintiff went to the defendant's home the following day, April 4, 1948. The plaintiff and defendant were alone, and while they were going through the house the defendant said she did not want anything, that there was no sentiment about it and she would be better off out of the big house, and told the plaintiff: " 'Everything is yours, lock, stock and barrel.' " The plaintiff saw the pair of candelabra that day. The defendant told her: " 'They belong on this table; they are yours. They belong in this house.'

* * * 'I couldn't use them in a small house.' " The parties then discussed the exchange of properties and household furnishings. An agreement was written out by the plaintiff. The plaintiff testified that the defendant dictated the agreement, but this is denied by the defendant.

The agreement, exhibit No. 1, is as follows: "Between Vergina Frye and Myrtle Fitzsimons agreement on furniture Party 2. Fitzsimons agrees To Leave refrigerator and Stove on 2nd floor Electric range In Kitchen also deep freeze White Handles. Mrs. Frey takes 2 bedroom sets the furniture known as In Wyona's apt. also her refrigerator. Also her desk and Duano. rose. this is our personal agreement between we two." Signed "Virginia R. Frey. Myrtle Fitzsimons."

On April 6, 1948, the plaintiff, her friend Roy Young, and the defendant met in the office of the defendant's counsel. Plaintiff's counsel was also present. A discussion was had between the parties as to the contents of a contract to be prepared for the exchange of real estate between the parties. The witness Roy Young testified that at that time the plaintiff handed the defendant's counsel the agreement, exhibit No. 1, and asked him to look it over and have the defendant verify her signature. Counsel handed it to the defendant. She acknowledged her signature, and discussion ensued between the defendant's counsel and the defendant with reference to the rights of the defendant under the agreement. The plaintiff testified that the defendant said she knew what it meant, she had no sentiment about it, and she was trading and getting what she wanted. The defendant denied that she had the agreement, exhibit No. 1, on that day, or that anything was said about it by the plaintiff or any other person, and stated that her counsel did not see exhibit No. 1 until after the instant case was started.

On that date counsel for the respective parties suggested that a contract be drawn in connection with any personal property that was to be exchanged. To such

suggestion both the plaintiff and defendant said they would handle that matter between themselves. With reference to this agreement, the testimony of the parties is to the effect that the purpose for drawing the agreement themselves was to save attorney fees and cut down on revenue stamps, and that there was no reason to include such agreement in the real estate contract.

On April 20, 1948, the contract with reference to the exchange of real estate was effected by the parties. The next day the parties started moving, and the moving was completed either on April 28 or 29. During the moving process. there was argument between the plaintiff and defendant with reference to moving certain articles which included the candelabra. Three or four days after the moving was completed plaintiff discovered that the candelabra were missing.

On May 5, 1948, the deeds were signed and delivered by the respective parties. Both their counsel were present. This completed the real estate transaction. In concluding the settlement, the plaintiff gave the defendant a check which, after deducting a tax claim, amounted to $324.97, and leases were assigned.

The defendant testified that when the agreement of April 4 was entered into she told the plaintiff that she would keep all personal belongings such as all bric-a-brac, mirrors, silver, and anything like that; that she had owned the candelabra, which is of grape design and part of a set, for a period of 20 years; that she never had any conversation at any time with the plaintiff wherein the plaintiff claimed the candelabra; that at the time of the exchange of deeds on May 5, 1948, she and the plaintiff, in response to her counsel's question, stated that everything had been completed; and that the plaintiff stated that she had everything she was supposed to get, and the defendant made a like statement. She further testified that the plaintiff had no complaint and made no protest when she signed and delivered the deeds, and at that time everything was amicable and friendly.

Plaintiff's counsel testified that at the time the exchange of the real estate was consummated there was no discussion about personal property which should be left in the defendant's home.

An official of the storage and transfer company that moved the parties testified he never heard any conversation during the progress of the moving between the plaintiff and defendant relative to the candelabra. After the move was completed and while he was collecting his bill he had a conversation with the plaintiff and Roy Young, wherein the plaintiff said she was satisfied with the move, and made no complaint about not receiving the candelabra. She paid her bill and acknowledged on the ticket that the work was satisfactory and all goods received in good condition.

Roy Young further testified that he saw the candelabra in the dining room of the defendant's home, and that he understood she was to keep the silverware, that is, the knives and forks. He did not recall a conversation about the candelabra.

The candelabra were taken under the writ of replevin and placed in possession of the plaintiff.

It is apparent from the evidence that there is a conflict therein with reference to the ownership and right of possession of the candelabra. We conclude the trial court did not err in submitting the case to the jury.

The defendant contends that the word "furniture" used in the agreement, exhibit No. 1, does not include silverware or candelabra, and tendered an instruction to such effect, which was refused.

The word "furniture" has been defined to include movable articles, including articles of ornamentation. See, Webster's New International Dictionary; 37 C. J. S., Furniture, pp. 1412, 1413, and 1414.

Furniture means all personal chattels which may contribute to the use or convenience of the householder or the ornament of the house. See, Marquam v. Sengfelder,

24 Or. 2, 32 P. 676; Bell's Administratrix v. Golding, 27 Ind. 173.

We conclude that the word "furniture" included the candelabra in question, and the trial court did not err in refusing defendant's tendered instruction contra thereto.

The defendant contends the trial court erred in permitting oral testimony to be received with reference to the agreement. It will be noted that the agreement is ambiguous and difficult to construe. In such a situation the following authorities are applicable: "Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a construction as the other party would be fairly justified in giving to it." Flory v. Supreme Tribe of Ben Hur, 98 Neb. 160, 152 N. W. 295. See, also, Blum v. Poppenhagen, 142 Neb. 5, 5 N. W. 2d 99; Bradway v. Higgins, 152 Neb. 724, 42 N. W. 2d 627.

"Parol evidence is generally admissible when it is offered for the purpose of explaining and showing the true nature of the transaction between the parties. Such evidence is not offered for the purpose of varying the terms of a written instrument between the parties." Brock v. Lueth, 141 Neb. 545, 4 N. W. 2d 285. See, also, Davis v. Sterns, 85 Neb. 121, 122 N. W. 672; Spangenberg v. Losey, 116 Neb. 112, 216 N. W. 191; Bradway v. Higgins, *supra*.

No error was committed by the trial court in permitting the testimony objected to to be received.

The defendant predicates error on instruction No. 4 given by the trial court as follows: "You are instructed that before the plaintiff can recover in this action, she must prove, by a preponderance of the evidence, all of the material allegations of her amended petition. Therefore, the burden is on the plaintiff to prove, by a preponderance of the evidence (1) That at the time of the

commencement of this action, she was the owner and entitled to the immediate possession of the property described therein, to-wit: One pair of large tall grape candelabra, and (2) That the same were at that time wrongfully detained from her by the defendant. If the plaintiff has established both of said propositions, by a preponderance of the evidence, then your verdict should be for the plaintiff. On the other hand, if you believe, from a preponderance of the evidence, that the plaintiff has failed to establish said propositions, your verdict should be for the defendant."

The defendant contends that the language "if you believe, from a preponderance of the evidence, that the plaintiff has failed to establish said propositions, your verdict should be for the defendant" is prejudicially erroneous. The following authorities are cited to disclose the legal importance of the burden of proof.

The burden of proof means the duty resting on one party or the other, usually the party having the affirmative, to establish by preponderance of evidence a proposition essential to the maintenance of the action. In this sense the burden of proof never shifts or changes, but remains from first to last where it is placed by the pleadings or the substantive law of the case. This rule is founded upon the obvious purpose of facilitating justice by serving the convenience of the court; and as the rule as to burden of proof is a fixed rule of law, the burden never shifts from the party having the affirmative of the issue. The rule as to the burden of proof is important and indispensable in the administration of justice, and constitutes a substantial right of the party upon whose adversary the burden rests. It should therefore be jealously guarded and rigidly enforced by the courts. The test for determining which party has the affirmative, and therefore the burden of establishing a case, is found in the result of an inquiry as to which party would be successful if no evidence at all were given, the burden being of course on the adverse party.

See Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 146 Neb. 47, 18 N. W. 2d 551. See, also, Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645; 20 Am. Jur., Evidence, § 135, p. 138; In re Estate of Hagan, 143 Neb. 459, 9 N. W. 2d 794, 154 A. L. R. 573; 46 Am. Jur., Replevin, § 113, p. 62.

The plaintiff in an action of replevin has the burden of proving his case by a preponderance or greater weight of the evidence. Thus, the burden is upon him to show that at the time of the commencement of the action he was the owner of the property sought to be replevied, that he is entitled to immediate possession of the property, and that the defendant wrongfully detains it.

The instruction on the burden of proof heretofore set out, especially the language "if you believe, from a preponderance of the evidence, that the plaintiff has failed to establish said proposition, your verdict should be for the defendant" used therein, does not show what rule of law the jury is required to believe from a preponderance of the evidence that the plaintiff has failed to prove his case, before the defendant can recover. There is no language in the instruction that informs the jury to whom the verdict should go in the event the evidence was equally balanced, or in the event the evidence preponderates in favor of the defendant. In view of the authorities cited upon the burden of proof and an analysis of the instruction on the burden of proof heretofore stated, we conclude that the giving of the instruction in the form in which it was given constituted prejudicial error.

Other assignments of error need not be discussed.

For the reasons given in this opinion we reverse the judgment and remand the cause for new trial.

REVERSED AND REMANDED.