GREEN  RIDGE  FUEL  Co.,  Appellant,  v.  REBECCA  LITTLE-
JOHN  ET  AL.

**Landlord  and  tenant:** LEASES : EXECUTION : PAROL  EVIDENCE.  A  lease
1  signed  by  only  a  portion  of  the  interested  parties,  under  an  agree-
ment  that  it  should  not  be  binding  until  signed  by  all,  is  not
executed  until  so  signed;  and  oral  evidence  of  the  agreement  is
not  objectionable  as  tending  to  vary  the  writing,  but  is  competent
to  show  that  it  never  became  obligatory.

**Leases:** UNILATERAL  CONTRACT.  Where  the  terms  of  a  lease  contem-
2  plate  that  all  the  interested  parties  shall  sign  the  same,  and  the
lessee  is  obligated  to  work  and  pay  rent  for  the  premises,  it  is
not  an  unilateral  instrument.

**Mines  and  mining:** LEASES : ACCEPTANCE.  A  lease  of  coal  land  exe-
3  cuted  by  only  a  portion  of  the  grantors,  with  the  understanding
that  it  was  not  to  be  binding  until  signed  by  the  other  grantors
and  the  lessee,  was  not  rendered  obligatory  by  the  fact  that
the  lessee  without  signing  the  instrument  went  onto  the  premises
and  prospected  for  coal  under  a  provision  that  he  might  do  so,
and  if  in  his  opinion  coal  in  paying  quantities  was  found  he
should  mine  the  same  and  pay  a  royalty  to  the  lessors,  since  by
the  terms  of  the  contract  it  was  optional  with  him  whether  he
should  mine  or  not.

*Appeal  from  Mahaska  District  Court.*—HON.  BYRON  W.
PRESTON,  Judge.

MONDAY,  FEBRUARY  15,  1909.

WILLIAM  A.  Littlejohn  died  testate  April  20,  1902,
survived  by  a  widow,  Rebecca  Littlejohn,  and  nine  chil-
dren.   By  the  terms  of  the  will,  the  use  of  the  realty
was  given  to  the  wife  so  long  as  she  remained  his  widow
and  during  her  natural  life,  and  upon  her  death  the  prop-
erty  to  be  divided  between  his  children,  share  and  share
alike.   The  widow  accepted  under  the  will,  and  on  the

10th day of October, 1906, she and all but three of the children, Melville B. Littlejohn, Mary A. Smith, and Alta M. Rogers, signed a lease conveying coal underlying the surface on conditions named to the Crescent Coal Company. This company in prospecting discovered coal in workable quantities, and on the 10th day of July, 1907, assigned the lease to the plaintiff. On April 30, 1907, the widow and all the heirs executed a somewhat similar lease permitting the removal of coal on specified conditions to H. C. Miller and A. W. McMillan, and after an extension of time, executed May 20, 1907, these lessees assigned the lease to Andrew Love, who after drilling nine holes sunk a prospecting shaft, and after lifting considerable coal drove an entry. The ultimate issue was whether plaintiff or Love was entitled to mine the coal from the land. The court dismissed plaintiff's petition, and it appeals.—*Affirmed.*

*H. H. Sheriff,* for appellant.

*John F.* and *Wm. R. Lacey,* and *W. H. Keating,* for appellees Littlejohn and others.

*Bolton & Bolton,* for appellees Love and others.

LADD, J.—The alleged lease to the Crescent Coal Company dated October 10, 1906, was assigned by it to the plaintiff July 10, 1907. The instrument, which for convenience may be designated the first lease, purported to be from the widow and heirs of William A. Littlejohn to the former company; but neither it nor two of the heirs ever signed such instrument, and the guardian of a minor heir had signed his name thereto without an order of court. The lease executed April 30, 1907, by the widow and heirs to Miller and McMillan, and by them assigned to Love, is not challenged save as purporting to permit

the removal of coal previously disposed of by virtue of the first lease under which plaintiff claims.

The controlling question is whether the instrument of May 10, 1906, was binding on the parties thereto at the time the second lease was executed. Appellees contend that the first lease was never executed, and that, if it was, it was subsequently abandoned. The evidence is conclusive to the effect that Crew, representing the Crescent Coal Company, and the widow and heirs in negotiating the lease, expressly agreed orally that the instrument should not be binding on the parties thereto until signed by all the heirs and the company and a copy signed by the company was returned to them. As two of the heirs and the company failed to sign the paper, it never was executed. Appellant, however, argues that oral evidence of the arrangement under which part of the heirs signed was not admissible because tending to vary or contradict a written contract. Such was not the purpose of the evidence, but rather to show that the writing never became obligatory at all, and to do that it was competent. *Sutton v. Weber,* 127 Iowa, 361; *Creveling v. Banta,* 138 Iowa, 47.

1. LANDLORD AND TENANT: leases: execution: parol evidence.

But appellant contends that it should be treated as a unilateral agreement. Such was not the intention of the parties, for, apart from the oral arrangement referred to, by the terms of the lease obligation to work the mine and pay rent or royalty are imposed on the lessee, and the instrument stipulates that the parties are to bind themselves by signing the lease. As it was not so intended, the lease should not be construed as unilateral. *Flanders v. Merrill,* 38 Iowa, 583; *Cross v. Snakenberg,* 126 Iowa, 638.

2. LEASES: unilateral contract.

Nor was such lease accepted and adopted by the parties as to render it binding. True, the lessee was to "test said land by drilling and otherwise, and, in case there

should be discovered a minable vein or basin of coal of

3. MINES AND
MINING:
leases:
acceptance.

sufficient quantity and quality to justify the opening and mining of said coal in the opinion of said party, then they agree to mine out said coal," and pay as stipulated. In other words, it was optional with the company whether it should mine the underlying coal, and it was allowed to prospect in order to enable it to elect whether it would do so. It went upon the land for the purpose of investigation, and not in pursuance of an agreement to mine. Such possession neither bound it to proceed under the lease, nor was it notice of acceptance to the lessors. In prospecting coal was discovered in workable quantities, but the company never so advised the lessors. Indeed, the president of the company testified that "the Crescent Coal Company had never made up its mind as to what it would do," and, believing it "a better proposition to sell the lease than to open the mine," assigned the lease to plaintiff. In so far as disclosed by the record, it may still be in this condition of uncertainty. As it had neither signed the lease nor accepted its terms, the paper never became binding on the parties thereto. The widow and heirs could not have enforced the terms of the lease. *Love v. Atkinson,* 131 N. C. 544 (42 S. E. 966); *Castro v. Gaffey,* 96 Cal. 421 (31 Pac. 363). Nor could the Crescent Coal Company without signing and electing to proceed to mine coal thereunder. Ordinarily time is held to be of the essence of mining contracts, even though not expressly so stated, and parties thereto must be vigilant in asserting their rights thereunder. See *Merk v. Bowery Min. Co.,* 31 Mont. 298 (78 Pac. 519); *Waterman v. Banks,* 144 U. S. 394 (12 Sup. Ct. 646, 36 L. Ed. 479). Whether there has been such delay in this case as to defeat the contract need not be considered, as the lease never became binding on either party thereto, and nothing passed under the alleged assignment to plaintiff.

What· we have said sufficiently answers the contention that the lease, as it were signed by the widow, a life tenant, was valid.

The petition was rightly dismissed, and the judgment is *affirmed*.