## CLINTON FILM SERVICE COMPANY AND OTHERS v. ELIZA CONAN AND OTHERS.[1]

April 19, 1918.

No. 20,773.

**Landlord and tenant — injunction — specific performance.**

Action in equity to enjoin the lessors from prosecuting an action in unlawful detainer against the tenants and occupants of a building, and to have specific performance decreed of a subsequent contract wherein the rent in the lease is materially reduced for part of the term. It is *held*:

(1) No reversible errors were committed in the rulings on admission or exclusion of testimony.

(2) The issues, whether the lessors had fully completed the improvements stipulated for at the time the lease was made, and whether the subsequent written instrument, signed by plaintiffs but not by the lessors, ever became an effective contract, were both tendered by the pleadings; and hence the court did not err when reopening the case and requiring plaintiffs to file a bill of particulars of the items concerning which the improvements were lacking or incomplete, and the damages claimed by reason thereof.

(3) The finding that the stipulated improvements were fully made on or before December 1, 1915, is sustained by the evidence.

(4) Upon that issue the parties were not concluded by the judgments in the unlawful detainer actions, rendered in July and September previous, since extensive work on these improvements was made by the lessors after the rendition of those judgments. Nor were the lessors precluded, by their claim that the improvements were completed in June and by the bringing of the detainer actions, from entering the premises within a reasonable time thereafter and completing the improvements in those respects wherein the tenants or occupants claimed incompleteness.

(5) The evidence sustains the finding that the alleged agreement subsequent to the lease never became effective as a binding contract.

Action in the district court for St. Louis county to restrain defendants from prosecuting an action for unlawful detainer in the municipal

[1]Reported in 167 N. W. 289.

court of Duluth. The case was tried before Cant, J., who made findings as set forth in the fourth paragraph of the opinion and denied the injunction. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*McCoy & Hansen,* for appellants.

*Fryberger, Fulton & Spear,* for respondents.

HOLT, J.

In February, 1915, the defendant Conan owned a double two story brick building in the business part of Duluth, and plaintiffs Clinton and Apostolakos were tenants, each having a lease until May 1, 1916. Clinton conducted a moving picture theater therein and the other tenant a candy store. The rent each paid was $300 a month. The tenants desired more space and additional conveniences. Negotiations between the tenants and owners resulted in a written agreement, dated February 18, 1915 (copy of which is attached to the complaint as Exhibit C), under which the owners were to erect a two story addition, in rear of the building, with basement and heating plant, to be finished to correspond with the existing building; and, as a part of the same transaction, a new lease (copy of which is attached to the complaint as Exhibit B), was executed on that day of whole premises to Clinton as lessee, to begin May 1, 1915, and to continue for 5 years, for the rent of $56,000, to be paid in equal portions of $833.33⅓ per month for the first 2 years of the term, and $1,000 per month for the last 3 years thereof. The monthly payments were to be made on the first day of each calendar month. The lease contained a provision that until the addition and improvements, specified in the building contract referred to, had been completed the rent should be $600 "per month, payable in advance on the first day of each and every calendar month, commencing May 1st, 1915." Clinton sublet to the ones conducting the candy store. Soon after the execution of this agreement and lease the owners erected the addition, and claimed to have fully completed the work early in June, 1915, except the installation of toilets in the basement. The lessee denied that the work was done as agreed, and declined to pay more than $600 a month rent.

In July the owners brought an action in the municipal court of Duluth for restitution of the premises for nonpayment of the rent of $833.33. The defense was that, because of failure to do all things called for by the building agreement, there was no rent due other than the $600 that had been tendered and refused. The lessee was found not guilty. Toilets in the basement were then installed. Thereafter another action was brought by the lessors to oust the tenant and subtenants for nonpayment of rent. The same defense was made and sustained by a jury in the municipal court in September, 1915.

Subsequently the parties attempted to settle their disputes. On November 11, a written agreement was prepared stating what more should be done by the owners in the way of improvements or changes before the rent could be advanced above $600 per month. Plaintiffs claim this agreement to be in effect and attach a copy thereof to the complaint as Exhibit D. The agreement was signed by the occupants under the lease; but the owners, before signing, struck out this provision upon which the importance of this lawsuit to the lessee hinges, viz.: "That it is expressly understood that the greatest amount of rent provided for under the lease of February 18, 1915, by the first parties herein as lessors, and this agreement, is $833.33 per month aforesaid." Plaintiffs consenting, the owners entered upon the premises, during the latter part of November, and made changes and betterments exceeding $700 in cost, and claimed that all that had been agreed to under the building contract, and more, had been fully completed on November 30, 1915. The lessee tendered $600 in full for rent of December, 1915, the owners demanded $833.33, and when it was not forthcoming instituted another action in unlawful detainer in the municipal court of Duluth.

Thereupon plaintiffs, composed of Clinton the lessee, his assignee the Clinton Film Company and Apostolakos, the subtenant, parties to the alleged agreement of November 11, 1915, and occupants of the building, brought this action against the owners and their agent to enjoin the prosecution of the action in the municipal court. The court made findings, denied the injunction, and also determined that the rent beginning with December 1, 1915, and thereafter until May 1, 1917, was $833.33 per month, and from that date the rent was to be

$1,000 per month, as provided in the lease, and that the lessors have judgment against the lessee and assignee for the amount due under the findings. Plaintiffs appeal from the order denying the motion for amended findings and a new trial.

The printed record, without the exhibits, contains nearly 1,200 pages. The action was tried to the court, and apparently with great thoroughness by both sides. The contentions of counsel were clearly stated and persistently pressed upon the attention of the learned court below at every stage of the lengthy trial, and were patiently and fully considered from every angle. Under such circumstances reversible errors on rulings are not likely in a case tried to the court. And we leave the assignments of error on the admission and exclusion of testimony with the remark that they have all been examined and we find the challenged rulings either palpably right, or else relating to testimony so inconsequential that, even if technically wrong, the result could not possibly have been affected thereby.

After both parties had rested and orally argued the case, the court announced that, as he then saw the situation, the injunction asked could not issue, and that Exhibit D never took effect as a contract, but regretted that he had not earlier in the trial reached that conviction and notified counsel, in order that they might have more pertinently directed testimony and arguments to the question whether there had been a substantial performance of the building contract by the making of the improvements in November, 1915, so as to do away with the provisional reduction of the rent in the lease; and also, in that connection, first, whether anything that had occurred had operated as a waiver by plaintiffs, if there had been any failure to perform, and second, whether the making of the improvement in November, instead of earlier in the season, precluded the lessors from making the claim that the original agreement had been substantially performed. Further time was then granted to submit written briefs. Subsequently on motion the cause was reopened, plaintiff was required to file a bill of particulars of the claimed omissions to complete the original building contract, and state the reduction in rental value of the premises because thereof, and also all the other claims for damages by reason of the alleged incomplete performance of the building contract. Plaintiffs preserved exceptions to the action of the court in reopening the case.

140 M.—7.

Reopening the case for further testimony was discretionary with the court. The litigation already had, and that yet to come, in case the disputes between the parties were not settled in this action, demonstrates the wisdom of the court's action. Plaintiffs came into court demanding equitable relief. As basis therefor they set forth their lease and building contract, exhibits B and C; the failure of defendants to comply with the building contract; the modification of the lease by the November contract, Exhibit D, and the vexatious suits of defendants based on their contention that the building contract had been completed and that Exhibit D never became effective. The aim and duty of the court in an equity case are to do full justice between the parties, and not leave floating possibilities for future litigation in the issues properly before the court. It is obvious that here plaintiffs presented two controlling issues, namely, the performance of the building contract, and the existence of Exhibit D as a contract. Clearly no complaint can justly be raised by them to the court's passing upon both issues. To do so there was no need of a bill of particulars. But the court out of abundant caution and for the purpose of administering complete justice received evidence, under the bill of particulars ordered, as to whether any damage resulted to plaintiffs from some inconsequential omission in the performance of the building contract, and whether the time and manner of its performance should affect the amount of the rent stipulated in the lease. In this we see nothing whereof plaintiffs can complain. Moreover, plaintiffs asked for specific performance of Exhibit D, and the court could not do otherwise than determine its standing as a contract.

On the merits the appeal is disposed of by a consideration of the assignments of error directed against two vital findings of fact. The claim is that the evidence does not sustain the finding that the building contract was fully performed on or before November 30, 1915, except as to such matters of detail as may have been modified by consent of the parties or with respect to which strict performance was waived; nor the finding that Exhibit D did not become effective as a contract.

As to the finding first mentioned, we think the evidence abundantly sustains it. It is not necessary to go over the details. The cost of the improvements and additions to the old building exceeded $15,000. Na-

turally some changes from the original plans, indefinite as they were, took place during the work. There was wide room for the subsidiary findings that in certain respects the changes were expressly consented to and in others waived, and extra improvements added under circumstances inducing the belief in the lessors that the lessee accepted the same in lieu of unimportant omissions. There is of course dispute in the testimony of the parties as to these matters, but a careful reading of the record is persuasive of the correctness of the findings.

Two legal propositions are advanced by plaintiffs for a reversal. A bare statement of the situation is sufficient to show their inapplicability here. It is claimed that the adjudications in the municipal court are conclusive that the building contract was not fully completed so as to do away with the provisional reduction of rent from the $833.33 per month stipulated in the lease. We may assume, as did the trial court, that the judgments in the municipal court were decisive against defendants as matters stood at the time of their rendition. But thereafter, and in November, over $700 was expended by the lessors in completion of the building contract. It is plain that the former adjudications do not conclude defendants in any manner from now asserting and proving full performance.

Neither are we impressed with the soundness of the proposition that, since the adjudications in the unlawful detainer actions established that defendants had up to that time failed fully to complete the work prescribed in the building contract, they lost all right to enter for the purpose of completing the same so as to become entitled to the stipulated rent. It would be a travesty on justice if, after spending over $15,000 under this contract, the lessors should lose the stipulated increase of rent of some $19,000, because a dispute arose over comparatively trifling omissions or departures in the work apparently consented to by the lessee. There was here no such flagrant or wilful departure from the agreement that such serious consequences must follow. As soon as the addition and the improvements were fit for occupancy, plaintiffs promptly took possession and evidently with little faultfinding until the lessors called for rent at $833.33 per month. If there were any substantial omissions, plaintiffs were bound to give defendants a reasonable oppor-

tunity to carry out the contract. They did no more by their consenting to the work being done in November, 1915.

We are quite clear that the evidence fully sustains the finding that Exhibit D, attached to the complaint, never became a binding contract between the parties, hence there was no modification of the lease Exhibit B. Exhibit D was prepared in triplicate by the attorney for the lessors in their absence, they residing at Milwaukee. The attorney testified that in preparing that document he had forgotten that the lease provided for a raise in the monthly rent for the last 3 years of its existence, and so had in mind only the raise from $600 to $833.33. Clinton had left Duluth before it could be signed. It was desired by the attorneys and agents of the parties who were on the ground, that the alleged lacking improvements should be made speedily, so the attorney of the lessors on November 18, 1915, directed a letter to the attorneys of plaintiffs, who had the proposed unexecuted agreement in their possession, offering to make the improvements as provided in Exhibit D if plaintiffs would not interfere. The letter also has these provisions:

"If the agreement submitted to the parties some days ago shall be signed up, then these improvements are to be considered as pursuant to that agreement. If said agreement already submitted is not signed up by the parties for any reason, then you will understand that the offer to make said improvements and the making of said improvements if made is without prejudice to any rights of the owners of said premises."

On the same day the attorneys of plaintiffs accepted the offer as made by the letter, with the proviso that if Exhibit D was not signed up by plaintiffs before November 25, 1915, then they would understand that the offer to make the improvements and the making of the same, if made, would be without prejudice to any rights of the owners of the premises. The defendants immediately entered upon the premises and finished the work contemplated before December 1, 1915. Plaintiffs on November 24 signed Exhibit D in triplicate, retained one and gave the other two to defendants' attorneys who forwarded them to the lessors for execution. Before they appended their names the clause making $833.33 the maximum monthly rent was stricken out, and also one other clause of no importance here. When the document thus completed, by the signatures

of all the parties thereto, was tendered to plaintiffs, they refused to accept it. The contention is that the signatures of the lessors were not contemplated, the instrument becoming effective as a contract as soon as signed by plaintiffs only. We think neither the circumstances, nor the language of the letters bear out the contention. Exhibit D on its face requires the signatures of all the parties named and to be bound. Plaintiffs must so have understood when they signed, for they left the two upper lines of the spaces for signatures and witnesses blank in each triplicate, the evident purpose being that the lessors, the parties of the first part to the agreement, and their witnesses, should there sign. We do not think that the letters can reasonably be construed as meaning plaintiffs alone when using the word "parties," but that "parties" refers to every one named in the instrument. The letters also show the agreement to be tentative, for existing rights were not to be prejudiced by the entry or performance of the work contemplated, should there be a failure to sign. Furthermore, the oral testimony is that the attorney for defendants informed plaintiffs' attorneys when Exhibit D was presented that it was tentative and had to be approved by the owners.

With the findings above discussed sustained, no mention need be made of any other assignments of error, for the result must be as left by the court below. We may, however, state that, in our opinion, the evidence sustains all the findings made, and does not require the findings asked for by plaintiffs.

The order is affirmed.