## Pontrich v. Neimann.

(Decided May 5, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Signatures—Generally Party May Adopt Any Mark, Character, or Name as His Signature to an Instrument.—Generally a party may adopt any mark, character, or name as his signature to an in-

strument, which will bind him as effectually as if he had written his full name thereto.

2.   Frauds, Statute of—Extension Written Into Lease Above Signatures Held Validly Signed Within Statute.—Writing extending a lease for 10 years held validly signed within statute of frauds, when placed in old contract above signatures of parties, who called witnesses to attest such signatures, as they thereby adopted their old signatures as their signatures to new contract.

3.   Landlord and Tenant—Tenant for Years Holding Over May be Ousted Within 90 Days After Expiration of Year Without Notice to Quit—"Tenant by Sufferance."—Tenant for years, holding over, in view of Ky. Stats., section 2295, is tenant by sufferance from year to year, and forcible detainer proceedings lie to oust tenant within 90 days from expiration of any year of such holding over, without any notice to quit.

RICHARD PRIEST DIETZMAN and JOSEPH M. HUFFAKER for appellant.

MARK BEAUCHAMP for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This is a forcible detainer proceeding, originating in a justice's court in Jefferson county, where the tenant was found not guilty, appealed to the Jefferson circuit court, where the law and facts were submitted to the court and the tenant found guilty, and appealed from the judgment there entered to this court.

On September 21, 1911, Neimann by written contract leased a storehouse on the corner of Clay and Camp streets, in Louisville, to appellant, Pontrich, for two years from that date with the privilege of two additional years at thirty ($30.00) dollars per month. Pontrich immediately entered and took possession and occupied the premises for four years. About the time the lease was to expire appellant approached his landlord and asked for a renewal of the lease, whereupon the landlord said to him in substance, "Yes, I'll let you have it for ten years upon the same terms if you want it." Appellant asked if that agreement could be written into the face of the old contract, a copy of which he then had and presented, and the landlord answered in the affirmative. Thereupon appellant, in the presence of the landlord, Neimann, added at the bottom of the old contract between the same parties and just above the signatures of the parties these words: "Extended ten years from Septem-

ber 21, 1915." To the writing, as thus executed, was the signatures of Joseph B. Neimann and Nick E. Pontrich, the parties thereto. For several years thereafter appellant occupied the premises and paid his rent, thirty ($30.00) dollars per month to Joseph B. Neimann, the then owner. In 1921, Neimann died and appellee, Joseph Neimann, his son, became the owner of the property by inheritance and by purchase from joint heirs. Shortly after appellee became the owner he demanded possession and gave notice to appellant to vacate, but when appellant produced to appellee the writing with the ten-year extension added, he (appellee) dropped the matter and said nothing more about it until August 20, 1923, when he gave appellant this notice: "I hereby give you notice that I will demand possession of this property and the premises and improvements on September 21, 1923, at which time your lease upon said property expires. You are, therefore, requested to give possession on September 21, 1923, and there will be no extension of time beyond that date."

Appellant declined to vacate and the forcible detainer proceedings were instituted, resulting as stated above, the judge of the circuit court delivering the following opinion:

"This is an action for forcible detainer by agreement heard by the court without the intervention of a jury. I think it is controlled by C., N. O. & T. P. Ry. Co. v. Depot Lunch Room, 190 Ky. 121.

"The facts are that the extension of ten years was written by the tenant under the direction of the landlord, but it was never signed by anybody but was witnessed by two neighbors who were called in for that purpose.

"The law is that this writing not having been signed by the party to be charged, is void under the statute of frauds."

Appellant, Pontrich, insists that the judgment should be reversed for two reasons: (1) The parties, by acknowledgment of their signatures at the time of the addition to the writing, adopted their signatures theretofore placed to the writing, making it a valid execution under the statutes of frauds; (2) the lease was one from year to year and the tenant was entitled to six months' notice to vacate, whereas only one month's notice was given.

1. At the time the ten-year extension was written into the old lease above the signatures of the parties they called two neighbors to witness the contract granting the extension, and these two witnesses at the request of the parties signed the writing opposite the signatures of the parties, as witnesses, it being stated in their presence by the contracting parties that the term of the lease was extended for ten years and that the signatures of the lessor and lessee were already to the writing. In other words, the parties acknowledged their signatures to the writing as presented to the witnesses and thus adopted their old signatures on the writing instead of writing their signatures anew. The question is, did their conduct—this act —satisfy the requirements of the statute of frauds? We think it did. It is a general rule that a party may adopt any mark, character or name as his signature to an instrument, and if he does so he is bound as effectively as if he had written his full name thereto. The signature to a writing is placed there for the purpose of authenticating it and for the purpose and with the intent of the signor becoming and being bound thereby. Such a signature, one purposely made by the party on a previous occasion, may be adopted for a new writing then made, with the same effect as if made anew. This is a sufficient compliance with the requirements of the statute of frauds. 1 Cyc. 540; 27 C. J. 287 and 288; 25 R. C. L. 666; Browne on Statutes of Frauds 361.

A case very much like the one before us is Bidvard v. Cushman, 35 Hun. 18 (N. Y.), presented in section 181 of the topic ''Contract'' in the Century Digest, where it was held:

''It is urged that the new lease is not binding, because it was not re-signed by the lessors and redelivered. The added stipulation was written in the lease by one of the lessors in the presence, and with the assent of the lessee. The signatures of the contracting parties were then upon the lease. This was a good execution of a new or modified lease. (Bluck v. Gompertz, 7 Excha. 862; Woolley v. Constant, 4 Johns 54; Knapp v. Maltby, 13 Wend. 587; French v. Patten, 9 East. 350; Leake's Law of Contracts, 814, 815). The transaction between the parties, as found by the court, amounts to a re-execution and redelivery of the lease in its modified form, and it became as binding in that form as though it had been

redrafted and re-signed. Rewriting or re-signing, or both, would have added nothing to its validity."

A somewhat similar question was before the court in Bluck v. Gompertz, 7 Excha. 862. There the court said:

"It may, however, be inferred from the fact of the defendant himself writing the memorandum across for the plaintiff to sign, not only that he agreed that the bill for £150—previously substituted instead of one for £146 by the plaintiff, should stand in the place of that for £146—and impliedly that the defendant should be responsible for it; but also that he admitted that the original contract was, that he should procure to be accepted and see paid any bill for the amount of the invoice of the second parcel of wine, and that the invoice was £150, so that there would be proof of the contract alleged in the declaration in writing. If so, it may be inferred from the fact of the second memorandum being written on the same paper by the defendant, that it was meant to be authenticated by the old signature, so as to constitute a memorandum of the defendant's agreement in writing signed by the defendant. If so, the statute of frauds has been complied with; and although we have not come to this conclusion without some difficulty and doubt still remaining on the mind of my brother Parke, we think this is the true view of the case."

The opinion of the Supreme Court of Alabama in the case of Winslow v. Jones (Ala.), 7 So. 262 (1890), indicates that the proper rule of law would be to regard the paper as a compliance with the statute of frauds. In that case the statute required that a mortgage of personal property must be in writing and subscribed by the mortgagor. The mortgage in question was duly signed, and thereafter by consent of both parties a part of the property embraced in the mortgage was released and other property substituted by interlineation, but there was no new signing by the parties. The court held:

"Neither attestation by witnesses nor acknowledgment before an officer is essential to the valid execution of a mortgage on personal property; hence the insertion of other personal property by consent of all the parties does not affect its validity, a resubscription would be a mere formal and useless ceremony."

The court then quotes from Greenleaf on Evidence as follows:

"Note 1, section 568a. Whenever, therefore, a deed is materially altered by consent of the parties, after its formal execution, the grantor or obligor assents that the grantee or obligee shall retain it in its altered and completed form, as an instrument of title, and this assent amounts to a delivery or redelivery as the case may require, and warrants the jury in finding accordingly."

The same reasoning that "a resubscription would be a mere formal and useless ceremony" is applicable to a memorandum duly executed in compliance with the statute of frauds and afterwards altered in writing by the consent of both parties.

We do not think this case is controlled by the rule recognized in C., N. O. & T. P. Ry. Co. v. Depot Lunch Room, 190 Ky. 121, as suggested by the learned trial judge. The facts are very different. No question of adoption of old signatures was presented by the Depot Lunch Room case. In fact, there was no renewal of the lease contract and the lessee merely became tenant by sufferance from year to year. He claimed no writing signed or otherwise giving him a right to remain in the premises after the end of the five-year term. The lessee was, therefore, bound to surrender the possession of the premises at the end of his term, or, in case he held over for as much as ninety days, to surrender it at the end of the year; but if he failed to do so he was in the same position at the end of the year as he was at the end of the five-year term, and continued so until he surrendered possession or was turned out, in accordance with the provisions of section 2295, Kentucky Statutes. In the case before us now the parties, before the expiration of the term, agreed to an extension of the lease and by writing placed the new terms into the old contract above their signatures and adopted their old signatures as their signatures to the new contract, and acknowledged same as binding upon them. The writing was complete. This, it seems, was a sufficient writing to take the contract out of the statute of frauds and to make it effective for the full ten-year period.

2. As the original contract between the parties was for two years, with the privilege of two additional years, the tenancy was one by sufferance after the expiration of

the four years stipulated, and the tenant held over for ninety days or more, under our statutes, section 2295. The statute provides, in substance, that when a tenant for a year or more holds over after the expiration of his term, no right to remain on the premises is acquired until the expiration of ninety days from the end of the old term. But after the expiration of the ninety days' period the tenant becomes one by sufferance from year to year. If proceedings to oust the tenant are not instituted within the ninety days from the end of the term, then none are allowed until the expiration of one year from the termination of the old lease. At the end of the year the tenant must abandon the premises without demand or notice. He has no right to remain in possession; but, if he does so for ninety days, he acquires the right to remain the balance of the year. At the end of the year he must abandon the premises. He is not entitled to demand or notice. If he fails to do so forcible detainer proceedings will lie at any time during the first ninety days of the hold-over. From this we see that appellant was not entitled to notice to quit the premises. This, however, is immaterial in this case, since we have determined that the writing executed September 21, 1915, extending the lease for ten years from that date was validly signed and, therefore, not within the statute of frauds.

For the reasons indicated the judgment is reversed for proceedings consistent with this opinion.

Judgment reversed.