LEO C. HORN ET AL., APPELLANTS, v. WILLIAM C. STUCKEY ET AL., APPELLEES.

20 N. W. 2d 692

FILED NOVEMBER 30, 1945. No. 31958.

*Johnson & Johnson, Dwight Elliot,* and *Frank Glebe,* for appellants.

*Schaper & Runyan* and *Willard F. McGriff,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

YEAGER, J.

This is an action by Leo C. Horn, Claret L. Horn, Melvin Horn, Floyd S. Horn, and Edwin Maupin, plaintiffs and appellants, against William C. Stuckey and Sam Swenson, defendants and appellees, the primary purpose of which is to

obtain specific performance of a contract for the sale of real estate claimed to have been entered into by and between the plaintiffs, through the plaintiff Leo C. Horn, and the defendant William C. Stuckey. The defendant Swenson was made a party as tenant in possession and purchaser of the land with notice of the existence of the contract of sale between the plaintiffs and the defendant Stuckey.

The appeal is from the action of the district court in sustaining a general demurrer to the petition and dismissal of the action.

The petition sets forth that the defendant was the owner of certain real estate in Custer County, Nebraska, and that a valid and binding written contract was entered into between the parties by written offer and acceptance contained in six letters which letters are copied in full in the petition and made a part thereof.

The petition further sets forth that the offer was withdrawn after acceptance by plaintiffs by letter which letter is set out and made a part of the petition.

The seven letters including the one which plaintiffs contend is a repudiation of the alleged contract are the following:

"Gering, Nebr.,
Dec. 15-1943

Mr. Leo C. Horn
Eddyville, Nebr.,
Received your letter of Dec. 12th and also your letter of Oct. But at that time I got your Oct letter I was pretty busy harvesting potatoes & beets short of labor keeps me pretty busy.

I still want the same price I wrote you before.

I will take $5,000.00 dollars cash, and if you do not want to buy the place I would like to trade 80's that would straighten both of our places line.

I think this is a good deal for both of us. I do not care to sell just the 80 alone.

Yours truly,
W. C. Stuckey"

"Broken Bow, Nebraska
December 18, 1943

Mr. W. C. Stuckey
Route 2
Gering, Nebraska.
Dear Mr. Stuckey:

I received your letter of December 15th with reference to your property that joins mine and which I wish to buy. Today I went up with my attorney to check over the records to see the condition of the title. A patent was issued to a part of this land to 'the heirs of John K. Stuckey, deceased.' Later his widow conveys this land as the sole heir of John K. Stuckey, deceased. The deed states that at the time of his death he was a resident of Bedford County, Pennsylvania. I am advised by my attorney that the Pennsylvania laws at the present time provide that a widow only receives a portion of the real estate of her deceased husband. If no children or if only one child, she would inherit an undivided one-half interest. If more than one child she would receive an undivided one-third interest.

I presume that the laws were the same at that time as now, and if so she would not be his sole and only heir at law. Of course, there is the possibility that John K. Stuckey left a Last Will and Testament in which he devised all of his real estate to his widow. If so, then an authenticated copy of the will and of the order admitting the same to probate in Bedford County, Pennsylvania, will have to be obtained and short form proceedings instituted here to probate this foreign will.

If he did not leave such a will devising the entire interest to his widow and if by law she was not the sole heir of her husband, if he did not leave a will, then it would be necessary to quiet the title.

There are also three mortgages that are unreleased, but I am advised that these mortgages are barred by the Nebraska statutes.

I am advised by my attorney that there will be an expense

of approximately $250.00 in order to see that I have merchantable title if I purchase this property. I think it is only fair that we should divide this expense, and I will then stand the expense of furnishing myself an abstract. I am today having a letter written to the probate court of Bedford County, Pennsylvania, to find out if there was a will or not so as to be able to determine which procedure will be necessary or advisable.

I have the money in the bank with which to buy the land. If we can agree you may rest assured that immediately upon receipt of your deed your money will be paid over to you. It might be you would want me to have a deed prepared and sent to your bank with instructions to deliver the same upon payment of the amount we agree upon.

The improvements consist mainly of a couple of small buildings, windmill and tower, and fence and cross-fence. I presume that whatever improvements and fence now located upon said premises are yours and would go with the place and would not be removed or claimed by the tenant.

Won't you kindly let me hear from you right away?

Yours very truly,
LEO C. HORN,
Eddyville, Nebraska"

"Gering, Nebr.
Dec 21-1943

Mr. Leo C. Horn
Eddyville, Nebr.,
Dear Sir:

Your letter of December 18th received. In regards to 1/2 expense of the title I did not mean to take that price. for the place and stand part payment for the title. I meant $5000.00 cash and no deductions for title or abstract.

I have written Mr. Sam Swenson about the buildings about all I claim of the improvements is the well and wind mill and fence & cross fence and a small house, not knowing of any other building maybe Mr. Swenson has put up some thing else lately.

I have written Mr. Sam Swenson a letter in regards to the place and I will send you a copy of the letter. You will see by the letter what I want to know from him and maybe you could see him and find out these things, for they are slow in writeing back.

Yours truly,<br>
W. C. Stuckey"

"December 24, 1943.

Mr. W. C. Stuckey
Route 2
Gering, Nebraska
Dear Mr. Stuckey:

Leo C. Horn was in the office this afternoon, together with your last letter in response to one he recently wrote to you, and has agreed to the terms and conditions of your letter in that he will give you $5,000 cash for this place and he is to furnish the abstract at his own expense and do all things in connection therewith at his own expense.

He had your copy of a letter to John Swensen with reference to the improvements also. I suppose Swenson will write to you or see Leo Shortly and will advise what, if any, improvements he claims and what improvements belong to you and go with the place. We will appreciate if just as soon as you have this information you will advise Leo, or if it is more convenient you can advise us and we can get in touch with Leo and give him the information.

We presume you are married, but do not know your wife's first name so we had to leave a blank space for that in the event you are a married man, and in that event, of course, she will sign and acknowledge the deed before a notary also.

We have prepared a warranty deed conveying these premises by yourself and wife to Claret L. Horn, Melvin Horn, Floyd S. Horn, Leo C. Horn and Edwin Maupin, and we are showing the consideration to be $5,000.00. Of course, the necessary revenue stamps will have to be attached thereto. The revenue stamps are a part of the deed.

All you warrant is that you have good right and lawful authority to sell this property and warrant to defend the title to said premises against the lawful claims of all persons whomsoever. Both Leo and I checked the title in the office of Register of Deeds and we know that while there will be some proceedings that will have to be taken care of, that there are no persons who can make any lawful claim as against this property. We have written to the Probate Court of Bedford County, Pennsylvania, to determine the laws of that state at the time the patent was issued to the heirs of John K. Stuckey. His widow claimed to be his sole heir and we have to know the exact situation so we will know how to proceed. Leo understands that whatever costs and expenses there will be in fixing the title, the grantees have to take care of, including the abstract and extension.

We are enclosing check of U. S. Horn by Leo C. Horn on the Lexington State Bank in the sum of $1,000.00 as the first payment on the purchase price of this real estate described as the East Half of Section 8, South Half of the Southwest Quarter, the Northeast Quarter of the Southwest Quarter, the West Half of the Southeast Quarter and the East Half of the Northeast Quarter of Section 5, all in Township 13 North, of Range 20, West of the 6th P. M., in Custer County, Nebraska.

If you will have this deed properly executed and send the same either to the Nebraska State Bank of Broken Bow, or the Broken Bow State Bank of Broken Bow, Nebraska, with instructions to deliver the deed upon payment of the balance of the purchase price, $4,000.00, your money will be forthcoming immediately, or if you prefer to hold the deed there we will send the money and instructions to whatever bank you say with instruction to deliver the money upon you delivering the deed.

If there is any additional information you desire please do not hesitate to call upon us for the same.

Yours very truly,
JOHNSON & JOHNSON
By A. Paul Johnson"

"Gering, Nebr.
Dec 29-1943

Johnson & Johnson
Broken Bow, Nebraska.
Dear Sir:

Received your letter Horn check and deed. I am holding up the check & deed. till I get straightened up with Mr. Sam Swenson. I will write him again on Jan. 4th that will give him two weeks to answered in.

I do not like to hold up the deal. But I do not know what Swenson will try to do. The $125.00 he always held back I figure was for bait of some kind.

Yours truly,
W. C. Stuckey"

"December 31, 1943

W. C. Stuckey
Route 2
Gering, Nebraska
Dear Mr. Stuckey:

Mr. Leo C. Horn was in the office this afternoon and stated that as long as you had agreed to sell and he had agreed to buy the place for the sum of $5000 that he would be glad to pay the balance of the purchase price as soon as possible and receive your deed therefor.

If you have any other deeds or papers in connection with the chain of title you should send those with the deed.

Won't you kindly advise how you desire the money for the deed handled? In other words, if you wish to send the deed to one of the local banks in accordance with our previous letter or if you wish to have the money sent to some bank that you designate with instructions to send us the deed as soon as they receive the money for your benefit.

Hoping to hear from you right away, we beg to remain,

Yours very truly,
JOHNSON & JOHNSON.
By A. Paul Johnson"

"Gering, Nebr.
Jan. 5-1944

Johnson & Johnson
Broken Bow, Nebr.
Dear Sir:

Enclosed you will find your letter & Mr. Horn check and a deed you had prepared. I have sold my place to Mr. Sam Swenson and the deal is closed.

Yours very truly,
W. C. Stuckey"

The question first for determination is that of whether or not the letters do in fact and in law amount to a written contract for the sale of real estate. In arriving at a determination of this question certain controlling legal principles must be borne in mind.

One is that specific performance of a contract will not be decreed unless the minds of the parties to the contract have met. Mercer v. Payne & Sons Co., 115 Neb. 420, 213 N. W. 813; Alexander v. Turner, 139 Neb. 364, 297 N. W. 589; Gilgren v. Price, 140 Neb. 124, 299 N. W. 325.

Another is that to establish a contract capable of specific enforcement it must be shown that there was a definite offer and an unconditional acceptance. Mercer v. Payne & Sons Co., *supra*.

A third is that to be enforceable a contract for the sale of real estate or some memorandum thereof must be in writing and signed by the seller. Sec. 36-105, R. S. 1943; Campbell v. Kewanee Finance Co., 133 Neb. 887, 277 N. W. 593.

A fourth is that a valid contract in writing for the sale of real estate may be made by correspondence if all of the elements of a valid and binding contract are contained in the correspondence passing between the parties. Bradley & Co. v. Bower, 5 Neb. (Unof.) 542, 99 N. W. 490; Holliday v. McWilliams, 76 Neb. 324, 107 N. W. 578; Pottratz v. Piper, 95 Neb. 145, 145 N. W. 265; Shoff v. Ash, 95 Neb. 255, 145 N. W. 271; O'Shea v. Smith, 142 Neb. 231, 5 N. W. 2d 348.

Unless a contract meets the requirements of these principles it is incapable of enforcement.

It will be observed from the context of the first letter in the series that prior to this letter Stuckey probably had written one to Horn pertaining to this subject matter and Horn had written two to Stuckey. In this first letter it is clear that Stuckey offered to take $5,000 cash for the real estate.

From an examination of the letter in reply by Horn it will be observed that it contains no acceptance of the offer contained in the letter from Stuckey. This letter is a discussion of the condition of the title and a suggestion that if he should purchase Stuckey should bear one-half the expense of clearing the title. The sixth paragraph told Stuckey that plaintiff had the money in the bank, and it is further significant in that it makes clear that agreement for sale and price were not by the letter being agreed upon.

The third letter is from Stuckey to Horn. This letter fixes definitely and specifically the terms upon which Stuckey offered to make the sale. In this letter he makes it clear that his offer contemplates that if Horn chooses to accept he must do so on the basis of the payment of $5,000 cash without regard to the condition of the title.

No further communication was ever received by Stuckey from Horn. From this point on the correspondence was between Johnson & Johnson, attorneys for plaintiffs, and Stuckey.

As will be noted by the next letter in the series Johnson & Johnson wrote Stuckey that Horn had agreed to accept the offer of Stuckey. The acceptance was conditioned upon a warranty deed signed by the wife of Stuckey with a warranty of "good right and lawful authority to sell this property and warrant to defend the title to said premises against the lawful claims of all persons whomsoever." A check for $1,000 was enclosed and information was furnished as to the manner of payment of the remaining $4,000.

The next is a letter from Stuckey to Johnson & Johnson acknowledging receipt of the check and the proposed warranty deed. No words of acceptance or rejection are contained in the letter.

The next and last letter of negotiation is from Johnson & Johnson to Stuckey. In it Johnson & Johnson call attention to the agreement that plaintiffs contend was entered into and inform Stuckey that plaintiffs desire to pay the balance of the purchase price on reception of the deed.

A few days later Stuckey wrote Johnson & Johnson the letter in which he declined to sell to plaintiffs. With the letter he returned the check for $1,000 and the deed.

From this analysis of the letters in their chronology it becomes clearly apparent the first definite offer made by Stuckey was contained in the third letter of the series. To this letter Horn never did reply. To it Johnson & Johnson did reply apparently on behalf of Horn. For the purposes of this case we assume but do not decide that Johnson & Johnson were duly authorized agents of plaintiffs and had authority to act in their behalf.

In this letter there was no acceptance of Stuckey's offer. The letter amounts to a counteroffer to pay the named purchase price and to assume the cost of an abstract if Stuckey would execute and deliver a warranty deed signed by himself and his wife.

Stuckey replied to this letter but his reply cannot be interpreted as an acceptance of the terms of the counteroffer made by Johnson & Johnson. The next letter was from Johnson & Johnson to Stuckey and it is by fair interpretation a request for completion of the transaction on the basis of the former counteroffer. In nowise can it be said that this is an acceptance of the definite offer of Stuckey.

In the letters set forth in the petition we have been unable to find that the minds of the parties hereto met on the essential elements of a contract; we have failed to find a definite offer and unconditional acceptance; we find no writing signed by Stuckey which was unconditionally accepted by plaintiffs and no writing which amounts to the unconditional acceptance by Stuckey of an unconditional offer made by the plaintiffs. The petition of plaintiffs therefore failed to state a cause of action and the demurrer thereto was properly sustained.

The decree of the district court sustaining the demurrer of defendants and dismissing the action is affirmed.

AFFIRMED.

Paine, J., dissents.