HENRY PRIGGE, APPELLANT, V. HENRY OLSON, APPELLEE.

47 N. W. 2d 344

Filed March 30, 1951. No. 32946.

*Harry I. Hylton*, and *Perry & Ginsburg*, for appellant.

*W. W. Norton*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This action was instituted in the county court of Polk

County to recover from appellee the possession of land owned by appellant. The county court found for appellee and dismissed the case. Appellant filed and prosecuted a proceeding in error to the district court. It affirmed the judgment of the county court. Motion of appellant for a new trial was denied and he has appealed.

The assignments of error are that the findings and judgment of the district court are not sustained by the evidence and are contrary to law. If the evidence and permissible inferences therefrom, when viewed favorably to appellee, are sufficient to sustain the findings of the trial court, in the absence of an error of law, the judgment may not be disturbed. Conflicting evidence will not be weighed on review in an error proceeding. Willits & Co. v. Arena Fruit Co., 58 Neb. 659, 79 N. W. 624.

The land, the subject of this proceeding, was leased to appellee by a written contract dated November 12, 1946, for a term from the first day of March 1947, to the first day of March 1948. Appellee about July of 1947, solicited appellant for a lease of the land for the next crop year. He had an F.S.A. loan and that organization desired him to have a written lease for the following year. Appellant stated that it was not necessary to have a written lease, but that they could extend the term of the existing lease. He, in the presence and with the acquiescence of appellee, drew a line through the figures "1947" and "1948" in the provision designating the term in the duplicate lease belonging to appellee, and in place thereof inserted "1948" and "1949". This clause then read "from the first day of March, 48 49 1947, to the first day of March, 1948." This was done to "make it run another year." The lease was then returned to appellee by appellant.

Appellee about June 1948 talked with appellant concerning a lease of the land for the next crop year. Appellant said they could change the lease to extend it for the year 1949, and he changed the duplicate lease

belonging to appellee in his presence and with his approval in the same manner as was done in the previous year, but so as to express a term of one year later. Concerning this, appellant testified: "In about June of 1948 I rented the farm to Olson for the next year when he asked me for it." The changes made in the lease were "to extend it for the year 1949." The lease as modified was returned to and was taken and retained by appellee.

Appellee on June 20, 1949, went to the farm of appellant; he took with him his duplicate of the lease; he asked appellant about renting the farm for the next year, and appellant replied he would rent it for the crop year of 1950; he asked appellee if he had his copy of the lease with him; appellee produced it; appellant suggested they go into the house "where he had a pencil"; they entered the house and appellant in the presence and with the approval of appellee marked out the years 1949 and 1950 in the part of the copy of the lease belonging to appellee specifying the term thereof and inserted 1950 and 1951; and he then returned the lease to appellee.

The modifications of the lease as indicated above were done in each instance by appellant. Appellant believed that the lease contained a provision that in the event he sold the land the lease would be void. He testified: "I thought all the time that it was subject to sale, or I would not have rented it to him." An incompleted provision of the lease was: "This lease is subject to sale of the premises and in case of sale prior to the —— day of —————————, 19——, this lease shall be void * * *." Appellant entered into a contract on July 1, 1949, with a Mr. Powers for the sale of the land. He served written notice on appellee on July 18, 1949, in an attempt to terminate his tenancy and demanded possession of the premises on March 1, 1950.

On the cardinal question there is no dispute. The very narrow and restricted problem in this case is whether or not the original lease including the modifi-

cation thereof made on June 20, 1949, after it was signed and delivered, constitutes a written contract of lease within the demands of the statute. § 36-105, R. S. 1943.

The theory of the case as made and presented by appellant is that he rented the land involved by contract in writing to appellee for the term from March 1, 1947, to March 1, 1948; that appellee with the consent of appellant continued in possession beyond the term of his tenancy, which expired on March 1, 1948, and used the land for the years 1948 and 1949, as a tenant from year to year; that appellant on July 18, 1949, by a writing duly served by him on appellee, terminated his tenancy and demanded his surrender of occupancy and use of the premises as of March 1, 1950; and that the conversation of the parties and the change in the date of the expiration of the written lease as had and made on June 20, 1949, were ineffective to extend the term of the lease or to constitute a written lease of the land terminating on March 1, 1951.

If what the parties said and did on June 20, 1949, as recited above, was not sufficient to satisfy the statute of frauds, the appellee wrongfully prevailed in the trial court. An oral lease for only one year is void, within the meaning of the statute, if entered into prior to the beginning of the term. § 36-105, R. S. 1943; Schmidt v. Henderson, 148 Neb. 343, 27 N. W. 2d 396. A written lease signed by appellant would have been sufficient to obey the statute. Horn v. Stuckey, 146 Neb. 625, 20 N. W. 2d 692. But the written lease of the parties prohibits its extension or any use of the land by appellee beyond March 1, 1948, unless otherwise provided by writing signed by both of the parties. This is a legitimate subject of contract. The intention of the parties to a lease that a modifying agreement shall not become binding unless it is in writing signed by the parties will be given effect. Clinton Film Service Co. v. Conan, 140 Minn. 94, 167 N. W. 289. See, also, Hagan v. Moch,

249 Mich. 511, 229 N. W. 629; Green Ridge Fuel Co. v. Littlejohn, 141 Iowa 221, 119 N. W. 698; 35 C. J., Landlord and Tenant, § 449, p. 1171; 51 C. J. S., Landlord and Tenant, § 217b, p. 821.

The written lease was signed by the parties. Their adoption of their signatures thereon with intent, actual or apparent, to authenticate the lease as a new contract after the modification or change was made on June 20, 1949, would satisfy the demand of the statute. A signature to satisfy the statute of frauds may be on any appropriate writing placed there by the party to be bound or authorized, adopted, or appropriated by him with the intent, actual or apparent, to give force and effect to the writing. Mesibov, Glinert & Levy, Inc. v. Cohen Bros. Mfg. Co., Inc., 245 N. Y. 305, 157 N. E. 148; Drury v. Young, 58 Md. 546, 42 Am. R. 343; Wright v. Seattle Grocery Co., 105 Wash. 383, 177 P. 818; Knox v. Allard, 90 N. H. 157, 5 A. 2d 716; Restatement, Contracts, § 210, p. 287; 49 Am. Jur., Statute of Frauds, §§ 380, 381, pp. 683, 684.

The statute of frauds may be satisfied by the parties to be bound in adopting their signatures on an old contract to authenticate a new agreement. 49 Am. Jur., Statute of Frauds, § 377, p. 680.

Weber v. De Cecco, 1 N. J. Super. 353, 61 A. 2d 651, concerned a written lease signed by the parties thereto for a term of five years terminating on September 1, 1944. One of the lessees before that date asked the lessor to renew the lease. He refused. Shortly after September 1, 1944, he requested the lessees to produce and deliver to him the original lease. They complied with his request. The lessor inserted in the body of the lease the words " 'renewed for sixty months (60) from the first day of September, 1944.' " He then returned the lease to the lessees and they received and retained it and remained in the use of the premises. When he was asked why he had inserted the quoted phraseology and redelivered the lease to the lessees, he

said it was the "result of their plaguing him for a renewal; * * * and that he thought this renewed the lease." Thereafter the lessor made varied and various unsuccessful attempts, including actions in court, to oust lessees from the possession of the premises. The court in deciding the case said: "It therefore follows that the question of whether the insertion of the phaseology extending the term of a written lease originally signed by the parties but not thereafter re-signed is a compliance with the Statute of Frauds, turns upon the intention of the parties. It revolves about whether they intended to adopt the original signatures. Under the facts, it seems clear that the lease was delivered to the defendant with the intention of obtaining a renewal thereof; that the defendant inserted the phraseology for this purpose, and by his re-delivery to plaintiffs signified his willingness to adopt the original signature and so to be bound. Although there were no formal words used expressing this intent, the acts and conduct of the parties lead only to one conclusion, and that is that it was their intent. The desire to recognize the prior· signatures was inartistically expressed but the conversation and conduct is demonstrative of an intention to recognize and republish the original signatures. The lease above referred to is, therefore, considered as complying with the pertinent section of the Statute of Frauds, * * *."

Pontrich v. Neimann, 208 Ky. 715, 271 S. W. 1049, involved the sufficiency of a modified written contract of lease to satisfy the requirements of the statute of frauds. The tenant had occupied the premises for a term of four years by virtue of a written lease. About the time it expired he solicited a renewal of the lease and his landlord stated that he might have the premises for ten years upon the terms of the original lease. The tenant inquired if that fact could be written into the old contract, a copy of which he had with him. The landlord agreed it could. The tenant in the presence of the

landlord added at the bottom of the old contract above their signatures the words: " 'Extended ten years from September 21, 1915.' " The court said: "The signature to a writing is placed there for the purpose of authenticating it and for the purpose and with the intent of the signor becoming and being bound thereby. Such a signature, one purposely made by the party on a previous occasion, may be adopted for a new writing then made, with the same effect as if made anew. This is a sufficient compliance with the requirements of the statute of frauds."

Vidvard v. Cushman, 35 Hun (N. Y.) 18, considered a situation similar to the present case and concluded: "The original lease, and the lease as modified, being for terms longer than a year, were required by the statute of frauds to be in writing and signed by the lessors. The original lease was in writing and so was the modified lease. It is urged that the new lease is not binding, because it was not re-signed by the lessors and re-delivered. The added stipulation was written in the lease by one of the lessors in the presence, and with the assent of the lesee (lessee). The signatures of the contracting parties were then upon the lease. This was a good execution of the new or modified lease. * * * The transaction between the parties, as found by the court, amounts to a re-execution and re-delivery of the lease in its modified form, and it became as binding in that form as though it had been re-drafted and re-signed." See, also, Winslow v. Jones, 88 Ala. 496, 7 So. 262.

It is certain that there was a verbal lease of the land by the owner to the tenant for the year ending March 1, 1951. Appellee asked for it and appellant agreed he would rent it to him for the crop year 1950. They did more. They modified the written lease to include and evidence their oral agreement in this regard. The writing as changed was delivered by the appellant to the appellee. The time was getting late in relation to the harvest period and the time of prepara-

tion of the land for fall planting. The consummation of a contract for the ensuing year was mutually advantageous. Appellee would not have to surrender the possession and use of the land and appellant would retain a good tenant. Appellant, as he understood the contract, was not subjecting himself to any hazard by putting the agreement in writing and making it a part of the lease. If he did not sell the farm he had a satisfactory tenant, and if he did, he could escape, as he thought, by the escalator clause to the effect that the lease should be void in the event of a sale of the land. There is no doubt the parties mutually and firmly desired and intended to make the written lease as modified binding and effective for the year ending March 1, 1951. The mistake of appellant was in thinking the provision for avoiding the lease in event of sale was complete and operative. It is true the parties did not again sign the lease after the additional provision was placed on it. Neither did they state that they were adopting their original signatures. But in view of the circumstances of this case either of these would have been an idle ceremony or formality. Either or both would not have more effectually shown the adoption of their signatures already appended than making the change in the presence of each other and with their consent. The district court was correct in finding that there was a contract of lease in writing between the parties for the premises for the term from March 1, 1950, to March 1, 1951.

The judgment should be, and is affirmed.

AFFIRMED.