ROY J. SHELHAMER, APPELLEE, v. JAMES O'NEILL ET AL., APPELLANTS.

187 N. W. 2d 83

Filed May 14, 1971. No. 37791.

Norman Gonderinger and Thomas E. Brogan, for appellants.

William W. Griffin, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is an appeal from a district court judgment granting specific performance of a real estate contract. We reverse the judgment of the district court.

In the early part of September 1968, defendant James O'Neill purchased from a Mrs. Summers the land involved in this lawsuit, approximately 33 acres located on the outskirts of O'Neill, Nebraska. Shortly thereafter, Mr. O'Neill was approached by the other defendant, David Eby, as to the possibility of selling the property to Eby. At that time, O'Neill was operating a cafe on premises which he leased from Eby. O'Neill owned the fixtures, equipment, and inventory in the cafe. O'Neill told Eby he would sell the land to Eby in a "package deal"—Eby to buy the land for $26,000 which included the assumption of a mortgage, and O'Neill's interest in the cafe for $8,000. O'Neill wanted to move to California and thus get out of the cafe business. Eby agreed to buy both the land and the cafe interest if he could raise the money, which he subsequently did. All of the proposed sale negotiations between the two defendants were oral.

On October 28, 1968, plaintiff, accompanied by a real estate broker, went to O'Neill's home to see about buying the property in question. O'Neill told the plaintiff that the property was already sold to Eby. Plaintiff then asked him if Eby didn't take it, would O'Neill sell it to the plaintiff for $28,000, including the assumption of the mortgage. O'Neill said he would, *provided Eby did not take the property.* Plaintiff then requested that they put it all down in writing to protect against a fluctuation

in price. It is this written agreement that is in dispute here. At the trial, the original contract was never produced, the trial court accepting a carbon copy instead since it was alleged by the plaintiff that the original could not be found.

The contract provides that O'Neill agrees to sell the property in question to the plaintiff. Although the agreement does not give a full description of the property involved or who the buyer is, we believe that under prior case law, the contract, taken as a whole, is adequate in these regards. Wright v. Negus, 111 Neb. 260, 196 N. W. 148 (1923); Frahm v. Metcalf, 75 Neb. 241, 106 N. W. 227 (1905); Campbell v. Kewanee Finance Co., 133 Neb. 887, 277 N. W. 593 (1938).

The contract first came to O'Neill to sign. At that point he inserted the following clauses: "(1) To be sold with Stipulation of no Truck stop, Cafe or Auto Dealership for period of 3 years. (2) David Eby to have 1st choice at purchase of the property at the above (illegible)." O'Neill then signed the agreement and passed it on to the plaintiff. Plaintiff objected to the second inserted clause which concerned Eby's purchase of the property. According to O'Neill's testimony, plaintiff said to cross off that clause now and it would be put on a new contract the following Saturday, in the event Eby did not buy the property by Friday, November 1st. There is some dispute as to who actually crossed out the clause, O'Neill contending that either the plaintiff or the real estate agent did, and plaintiff claiming that O'Neill crossed out the lines. After the clause was deleted plaintiff signed the agreement. O'Neill's testimony was to the effect that he was signing a conditional agreement—plaintiff's right to purchase being conditional on Eby's failure to complete the transaction. Plaintiff also admitted at the trial that he knew of the previous transactions with Eby and of O'Neill's insistence that Eby have first option on the property.

Three days after making the disputed contract, O'Neill

completed sale of the property to Eby. Plaintiff brought this action for specific performance after unsuccessfully attempting to pay O'Neill some consideration on the October 28th contract.

Defendants contend that the contract between O'Neill and the plaintiff is unenforceable because it was not founded upon the mutual assent of the parties to all the material terms of the agreement. In order to determine if there was a mutual assent, we must look at the surrounding circumstances, the discussion 'and actions at the time of signing the contract, and the objects to be accomplished. Such an examination is needed to determine the true nature of the transaction, not to vary any of the terms of the written instrument. See, Stillinger & Napier v. Central States Grain Co., Inc., 164 Neb. 458, 82 N. W. 2d 637 (1957); Fitzsimons v. Frey, 153 Neb. 124, 43 N. W. 2d 531 (1950); Bradway v. Higgins, 152 Neb. 724, 42 N. W. 2d 627 (1950); 3 Corbin on Contracts, §§ 537, 538 (1960).

It is clear that O'Neill never intended to sell the property to the plaintiff unless Eby was unable to buy it first. O'Neill wanted to sell the cafe equipment and Eby was willing to take it and the land as a "package." Throughout the negotiations prior to signing the contract, O'Neill pointed out to the plaintiff that he had already sold the land to Eby. Plaintiff was fully aware of this, and yet he insisted that a contract be drawn up so that he could buy the land in case Eby should be unable to make the purchase.

The negotiations surrounding the contract clearly show that the parties did not agree on what the effect of the contract was to be. Plaintiff understood that Eby was still going to get the land if he wanted it, even though the clause explicitly stating this was deleted. It is abundantly clear that the failure of a sale to Eby was a condition precedent to O'Neill's responsibility to sell the property to the plaintiff. In part, it was the plaintiff's representations that led to this mistake on

O'Neill's part. In addition, O'Neill's actions after the contract substantiate his position. When Eby came forward to close the transaction, O'Neill immediately complied, even though he was selling the land for $2,000 less than he would receive from the plaintiff. We believe the cumulative effect of all these facts shows that O'Neill felt he was under a continuing obligation to sell the property to Eby, if Eby could raise the money.

This is not a case where one party misunderstands his rights or duties under a contract because he has not read the agreement. The important issues here center around what the parties said and did as evidence of what effect the contract was to have. Defendants were able to show that O'Neill was laboring under such a mistaken belief, a belief which was in part brought about by plaintiff's actions and representations, that a court of equity must refuse to give specific performance. Specific performance of a contract will not be decreed unless the minds of the parties to the contract have met. Krum v. Chamberlain, 57 Neb. 220, 77 N. W. 665 (1898); Stanton v. Driffkorn, 83 Neb. 36, 118 N. W. 1092 (1908); Mercer v. Payne & Sons Co., 115 Neb. 420, 213 N. W. 813 (1927); Horn v. Stuckey, 146 Neb. 625, 20 N. W. 2d 692 (1945); Herrin v. Johnson Cashway Lumber Co., 153 Neb. 693, 46 N. W. 2d 111 (1951). The plaintiff was not entitled to specific performance and the district court should have so ruled.

The judgment of the district court is reversed and the cause remanded with directions to dismiss the plaintiff's petition.

REVERSED AND REMANDED WITH DIRECTIONS.